[Crim. No. 4258. First Dist., Div. Three. Sept. 5, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN A. PEREZ, Defendant and Respondent.

Stanley Mosk, Attorney General, John S. McInerny, Robert R. Granucci and Albert W. Harris, Jr., Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Edward L. Cragen as Amicus Curiae on behalf of Defendant and Respondent.

DEVINE, J.—The People appeal from an order of dismissal of an indictment of respondent for unlawful possession of heroin and marijuana. Dismissal was on the ground that no evidence except that which had been seized illegally had been produced by the prosecution. The evidence, heroin and marijuana, was taken without a search warrant following arrest of respondent for violation of section 11556 of the Health and Safety Code, which provides: "It is unlawful to visit or to be in any room or place where any narcotics are being unlawfully smoked or used with knowledge that such activity is occurring." Respondent was not charged by complaint of violation of this statute, a misdemeanor, but by indictment of violation of section 11500 of the Health and Safety Code, the felony of possession of narcotics. The question is whether the arrest was a legal one, because the seizure of the narcotics is contended by the People to have been lawful as incident to a lawful arrest for violation of section 11556.

### The Premises

It is necessary to relate some actions of other characters prior to the entrance on the scene of respondent, because the statute itself makes the others in a sense the principal actors. The "place" to which respondent came is an apartment on Broderick Street, San Francisco. Some days preceding respondent's visit, an undercover agent, Officer Tolliver, bought a marijuana cigarette at this apartment from one Quentin Shoup, and, on another occasion, two bindles of heroin from Norman Tucker. On a third day he tried to buy more

heroin, but Tucker brought him into the bathroom and asked if he would like "to shoot one now." The agent said he was in a hurry and wanted to take the narcotics with him. At this point there was an interruption when a male entered the apartment and went into the bathroom with Tucker. Another male, St. Dennis, was called in and the three remained there about 15 minutes. Tucker and one of his visitors then went into the kitchen, and the agent heard pots and pans rattling. After the others had left, Tucker called Tolliver back into the bathroom and told him that he did not want to sell to anyone who didn't use narcotics because he would "hate for anybody to walk away from here with anything. I think the best thing for me to do is to meet you some place."

On another occasion, at another place, Tucker refused to sell to the agent and was arrested by Officer Pohley, who had heard all of the conversations on radio from a transmitter which Tolliver had concealed on his person.

### The Arrest

 Officer Pohley went to the apartment with Tucker and with a narcotics agent. Two men and one woman were present. One of the men, who was seated at the kitchen table, grabbed for a cigarette which was on the table, and in turn the agent seized him and he dropped the cigarette. It was partially burned. It contained marijuana. There is no evidence indicating when the cigarette had actually been smoked. There is no testimony about fumes of a cigarette, nor as to whether the cigarette was warm. The officers searched the apartment and found a package containing needles, a syringe and a spoon in the bathroom, and a package containing marijuana in the kitchen. While this search was being conducted, there was a knock on the front door, and a voice called out, "Norman." Footsteps were heard going away from the door and then coming up in the alleyway to the rear door. There was a knock and a male voice called out, "Hey, Norm." Pohley opened the door, identified himself as a police officer and said, "Norman's inside." Respondent and a man named Taylor, who is not party to these proceedings, entered the kitchen and told the officer that his name was Perez. Pohley announced that everyone was under arrest. Officer Pohley had received information, the source of which is not disclosed in the testimony, that "Mr. Perez was in business with a Mr. Tucker in the Mission District dealing with narcotics."

Perez was searched and three marijuana cigarettes were found in his shirt pocket. When questioned about how he

traveled to the apartment, Perez gave inconsistent answers, but a set of keys taken from his pocket opened a 1952 Lincoln parked across the street, which had not been there before the officers' entry of the apartment. A bottle containing 53 capsules of narcotics was found under the driver's seat. The officers then went to the Greyhound Bus Terminal at Seventh and Mission Streets, where a key taken from Perez was used to open a locker. In the locker was an airline bag which held a can of milk sugar, a box of gelatin capsules and a rubber container with 97.5 grams of heroin.

The search without a warrant of the locker, which was distant from the place of the arrest and not contemporaneous therewith, cannot be justified as an incident to the arrest. (*People* v. *King*, 60 Cal.2d 308, 311 [32 Cal.Rptr. 825, 384 P.2d 153]; *Castaneda* v. *Superior Court*, 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641]; *Tompkins* v. *Superior Court*, 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113].)

Narcotics having been found shortly after his arrest, on respondent's person and in his nearby automobile, the validity of the arrest must be determined.

Was there reasonable cause to believe that respondent visited a place where narcotics were being smoked or used, knowing that such actually was occurring? We think it must be held, as the trial court did hold, that there was not, because actually narcotics were not being used or smoked at the time, and obviously, as to the second element, *scienter*, respondent could not have known "such activity" to be "occurring" (these are the words of the statute) when it was not occurring; in this case, the better his knowledge of the state of affairs actually existent, the less would be the possibility of guilt.

Appellant replies that the status of the place is to be considered, not merely the activity, or absence of it, at the moment the visitor comes or during the time he remains. This contention cannot be sustained because: (1) The statute refers to actions, not to a standing condition, in its terms "*are being* unlawfully smoked or used," and "with knowledge that such *activity* is *occurring*." (Italics added.) (2) The statute formerly read: "It is unlawful to visit or to be in any room or place where any narcotics are being *or have recently been* unlawfully smoked or used." (Italics added.) The statute was declared unconstitutional because it lacked the requirement of *scienter*, and purportedly would have covered a visitor innocent of knowledge of what was going on. (*Bonwell* v. *Justice Court*, 148 Cal.App.2d 906 [307 P.2d 716].) The

Legislature not only added the *scienter* part, but also struck the reference to recent activities. It cannot be said that the part of the statute which was expressly deleted by the Legislature should still be given effect by the courts.

Appellant cites the case of *People* v. *Cahill*, 163 Cal.App.2d 15 [328 P.2d 995]. In that case arrest of defendant as a resident of a house of ill fame in violation of section 315 of the Penal Code was legal, where there was evidence that he was staying in the place, and where the character of the house was shown. A house of ill fame acquires its base status from its use, and this status exists independently, whether or not acts are happening at one particular time, as appears from the statute which allows proof of common repute of the place, its purpose, and its inhabitants. (Pen. Code, § 315.) Section 11556, as it now stands, refers to present actions, as explained above.

At oral argument, appellant proposed that it was lawful to arrest respondent for an attempt to violate section 11556, even if there were not probable cause to arrest him for the complete offense. This argument, if timely presented, would have introduced the problem whether there could be an attempt, under the circumstances of the case, to commit the offense denounced by section 11556 without rewriting the section, in effect, to include the part stricken by the Legislature, namely that relating to past occurrences. The point, however, was not made in appellant's brief, nor was it made at the hearing in the superior court. Concededly, it is an afterthought, but appellant argues that no matter when the idea occurred to the prosecution, it can be used now to justify the arrest.

Change in theory may be permitted on appeal when questions of law only are presented. (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738].) We think it inappropriate to allow the change, or addition, in this case, under all of the circumstances, including the omission of the theory from the brief. To allow such a change of position would imply that the judge hearing a motion to dismiss under section 995 of the Penal Code ought to think of all possible hypotheses which might be helpful to either side. This would be too demanding upon a trial judge and would be a departure from traditional adversary procedure.

Order affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1963.