James **TINNEY**, Appellant,

v.

Lawrence E. **WILSON**, Warden, et al., Appellee.

No. 22266.

United States Court of Appeals

Ninth Circuit.

Feb. 28, 1969.

Rehearing Denied April 10, 1969.

---

James Tinney, in pro per.

Thomas C. Lynch, Atty. Gen., Deral E. Granberg, Michael J. Phelan, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before HAMLIN, MERRILL and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant Tinney is presently in California penal custody pursuant to a conviction for possession of marijuana. Cal. Health & Safety Code & 11530 (West 1961). After exhausting his post-conviction remedies in the state courts, Tinney filed a petition for writ of habeas corpus in the court below. That court denied his petition without having conducted an evidentiary hearing, and Tinney appeals from that denial. Tinney's principal contention is that his conviction was based upon evidence—a marijuana cigarette—which was secured through an unconstitutional search and seizure.[1] Agreeing with this contention, we must reverse.

The facts surrounding Tinney's arrest for possession of marijuana are not in dispute. On the night of April 17, 1965, Officer McGill was patrolling a street in Los Angeles, with his partner, when a young woman called to him from the sidewalk and asked if he wanted a "date." She indicated that he should drive farther along the street and park his car. Officer McGill drove to a parking lot a short distance away, where his partner left the car. Officer McGill then returned to meet the girl, and they discussed an act of prostitution. The girl directed the officer to a nearby hotel where she agreed to commit prostitution. The officer, however, declined to enter the hotel.

1. Tinney's other two contentions—that he was not properly warned of his rights by the arresting officers and that he was denied effective assistance of counsel—are without merit.

At this point, a second young woman approached the car and discussed the matter with the first girl. The second girl then informed Officer McGill that the first girl would engage in an act of prostitution in the car at a location of his choice provided the second girl could follow in her car as lookout. Officer McGill agreed to this procedure. The second girl then left and returned shortly in a 1956 Pontiac, whereupon Officer McGill, accompanied by the first girl and followed by the second car, drove to the parking lot where his partner was waiting. Once the cars were stopped in the parking lot, Officer McGill placed the girl in his car under arrest for prostitution. He then went to the rear of the 1956 Pontiac, where he was joined by his partner, and the two then observed Tinney lying on the backseat of the Pontiac. As to succeeding events, Officer McGill testified [2] as follows:

> "A   I thought that Mr. Tinney was in a position to rob me had I driven into the alley where we had agreed to go.

> This second girl was placed under arrest for prostitution and Mr. Tinney was asked to get out of the car. And I ran my hands over his pockets.

> "Q   For what purpose?

> "A   A cursory search for weapons.

> "Q   You may continue.

> "A   And in his left pants pocket I felt from the outside an object that appeared to be, that felt to be round, and it crinkled, like cellophane. I could feel by gently squeezing this object that it felt to be pills or capsules.

> I asked Mr. Tinney what this object was and he replied, 'Nerve Pills.'

> *       *       *       *       *

> "A   At this time I advised Mr. Tinney that he had the right to an attorney, that he didn't have to say anything, and that anything that he said could be used in the future against him.

I then asked him if he had a prescription for these pills, and he said, 'No.'

> "Q   Was this statement freely and voluntarily given?

> "A   Yes, sir.

> "Q   Were all statements made by him thereafter freely and voluntarily given?

> "A   Yes, sir.

> "Q   You may continue.

> "A   I reached into his pocket and removed this cellophane package, and there were numerous pinkish pills * * * commonly referred to as 'red devils'.

> *       *       *       *       *       *

> "Q   * * * On April 17 when you found these pills on the defendant, what did you believe them to be?

> *       *       *       *       *       *

THE WITNESS: Seconal.

> "Q.   * * * Then what happened, sir?

> "A   At this time he was placed under arrest for possession of dangerous drugs, and at this time handcuffs were placed on him.

> "Q   Then what happened?

> "A   And then I searched the person of Mr. Tinney for any other evidence of pills, and in his left shirt pocket, the vest pocket, I found what appeared to be a brown paperwrapped cigarette.

> I took it out of his pocket and held it right in front of his eyes, and I asked Mr. Tinney, 'Where did I get this?'

> And he said, 'In my pocket.'

> And then [I] asked him what it was. And he said, 'It is marijuana.'

> I asked him where he got it and he said he got it from a friend for 50 cents."

Tinney was charged only with possession of the one marijuana cigarette.

---

2.   This testimony occurred at Tinney's preliminary hearing. At the trial, the case was submitted to the court on the tran-script of the preliminary hearing, supplemented only by testimony of Tinney.

Tinney's attempts at the preliminary hearing and the trial to suppress the evidence of the pills and the marijuana cigarette on the ground that they were the fruits of an illegal search and seizure proved unsuccessful. The trial judge admitted the evidence over objection, stating:

> "But I think the officers had every right to arrest this man without even patting him down or anything else. He was out there operating with a couple of juvenile prostitutes, concealing himself, but it's true the officers spent a lot of time talking about nerve pills in his possession.
>
> "I think they had the right to make the search, make the arrest."

Tinney appealed to the California District Court of Appeal, but that court, in an unpublished opinion, affirmed the conviction. It reasoned:

> "Under the circumstances the officers had the right to request the defendant to alight from the vehicle and to question him as to the reason for his presence. * * * The right to investigate gave rise to the right on the part of the officers, for the purpose of self-protection, to make a superficial search of the defendant for concealed weapons. * * * In the course of such search for weapons, Officer McGill touched and squeezed an object in the defendant's left pants pocket which 'felt to be pills or capsules.' The officer was not required to ignore the object which had aroused his suspicion * * * but was warranted, in the performance of his duty, in making inquiry of the defendant as to the nature thereof. At that investigatory stage, the officer properly asked the defendant to explain what the object was. Upon receiving the response, 'Nerve Pills,' the officer advised the defendant of his constitutional rights as required by the *Escobedo-Dorado* rule before he proceeded beyond the investigatory stage. He then asked the defendant if

he had a prescription for the pills and received the answer that he had no prescription. While the officer did not arrest the defendant until he had removed the object from the defendant's pocket and examined its contents, upon being informed that the defendant had 'Nerve Pills' for which he had obtained no prescription the officer had probable cause to arrest the defendant since there then existed such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the defendant was in possession of dangerous drugs obtained without a prescription."

(Footnotes omitted.) The California court then explained that the further search which was made after the arrest and which resulted in the finding of the marijuana cigarette was proper since it occurred incident to a lawful arrest.

█  We now have the advantage of recent Supreme Court pronouncements, made after the California courts met the problem. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Aided by the new guidelines, we reach the conclusion that the California courts erred in the application of fourth amendment principles. At the outset we think we must treat the initial "frisk" of Tinney by the officers as a limited search based upon suspicion of the possibility of criminal conduct rather than as a search incident to an arrest. We could not accept the proposition that Tinney's mere presence in the automobile and the resulting inference of his apparent association with the female offenders, standing alone, would supply sufficient probable cause for his arrest. Neither, apparently, could the reviewing California court, for its decision did not so hold.

██  As we see it, the first step in the officers' investigation of the circumstances surrounding Tinney was a "frisk" of him for weapons. In *Terry,*

the Supreme Court dealt with such a search and explained:

> "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

392 U.S. at 27, 88 S.Ct. at 1883. We have no doubt that, in view of the facts surrounding their discovery of Tinney, the officers had a right and, indeed, a duty to undertake a search of Tinney for weapons. As the High Court has carefully explained, however, "[a] search for weapons in the absence of probable cause to arrest, * * * must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." 392 U.S. at 25–26, 88 S.Ct. at 1882. Such a search "must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. at 1884. Officer McGill's search of Tinney for weapons was not so limited. In the normal course of his "frisk," he felt only a small object, which clearly was not, in his mind, a potential weapon. A portion of Officer McGill's testimony on cross-examination reads:

> "Q As far as you were concerned when you felt something like cello-phane in his pocket, it could have been anything; isn't that correct, anything but a weapon?
>
> "A It could have been anything that was shaped small like pills or capsules."

After noticing the presence of this small object, Officer McGill specifically directed his attention to the pocket and "could feel by gently squeezing" the object "that it felt to be pills or capsules." The Supreme Court "has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." Terry v. Ohio, 392 U.S. at 17–18, 88 S.Ct. at 1878 (citing prior Supreme Court decisions). While Officer McGill's "frisk" of Tinney for weapons was constitutionally valid at its inception, the officer's "squeezing" action transgressed the limits of a search which must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. at 1884.

That search which went beyond authorized "frisk" cannot be held as one made incident to lawful arrest. As the testimony of Officer McGill indicates, Tinney was not in fact arrested until after Officer McGill had actually entered the pocket of Tinney's coat and removed the packet of pills and had seen that they were, or at least appeared to be, the drug Seconal. This action surely constituted a search of Tinney's person which went far beyond a "frisk" for weapons. The California District Court of Appeal justified the extended search by reasoning that probable cause to arrest Tinney for the crime of possession of dangerous drugs without a prescription existed immediately prior to Officer McGill's removal of the packet of pills. Upon that assumption, the entry and removal of the packet would be constitutionally valid, inasmuch as a reasonable search of the person may be made incident to a valid

arrest.[3] *See, e. g.*, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In a case similar to the present one, the Supreme Court expressed the proper approach to this issue in the following manner:

> "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

In this case, prior to the removal of the packet of pills from Tinney's pocket, Officer McGill knew only that Tinney had in his possession certain "Nerve Pills" for which he had no prescription. Certainly, we may take notice of the fact that there are available at virtually any drug store, or, indeed, even at many supermarkets, numerous brands of pills which are advertised as having a calming effect upon a person's nerves. Many of these pills require no prescription at all and may be purchased by any adult. Despite this fact, however, Officer McGill made no inquiry of Tinney as to the nature of the "Nerve Pills" which

Tinney had freely admitted having in his possession. In view of these circumstances, we conclude that probable cause to arrest Tinney for possession of dangerous drugs without a prescription was lacking prior to the removal of the packet of pills from the pocket of Tinney's coat.

Since Officer McGill's discovery of the pills or capsules in Tinney's pocket did not follow lawful arrest and resulted from an unconstitutional extension of his "frisk" for possible weapons, it follows that any "fruit" of this search should have been excluded from Tinney's trial. *See* Linkletter v. Walker, 381 U.S. 618, 629–35, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). A review of the factual chain of events as related previously makes it clear, beyond doubt, that the discovery of the marijuana cigarette in Tinney's pocket was a direct result—that is, was a "fruit"—of the initial discovery of pills or capsules in Tinney's pocket.

The removal of the pills and the subsequent search resulting in discovery of the marijuana cigarette were, therefore, constitutionally impermissible, and the cigarette should not have been admitted into evidence at the preliminary hearing or in the trial.

Upon remand, the District Court will hold Tinney's petition in abeyance in order to afford California authorities a reasonable time, not exceeding thirty days, within which to conduct, if they choose to do so, a new trial in which the unconstitutionally obtained evidence is suppressed.

Reversed and remanded.

---

3. In this connection, we find ourselves in agreement with the following reasoning expressed by the Seventh Circuit:

   "When probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant."

   Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965).