[Crim. No. 18940. In Bank. May 7, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND WAYNE LEIB, Defendant and Appellant.

**COUNSEL**

Romines, Tooby, Eichner, Sorensen & Constantinides, Romines, Wolpman, Tooby, Eichner, Sorensen & Constantinides and Ron Romines for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert T. Granucci and Charles M. Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant Raymond Wayne Leib appeals from a judgment convicting him of possession of LSD (Health & Saf. Code, § 11350) and marijuana (Health & Saf. Code, § 11357). He pleaded guilty after an unsuccessful motion to suppress evidence under Penal Code section 1538.5. In this appeal he contends the evidence introduced against him was obtained by an illegal search and seizure. (Pen. Code, § 1538.5, subd. (m).) We conclude the point is well taken and the judgment must be reversed.

The facts are not in dispute. Three Sunnyvale police officers went to the home of one Richard Helton to execute a search warrant. After placing Helton and two juveniles under arrest, the officers searched the apartment and discovered an ounce of marijuana, some marijuana debris, and a pistol. They found no evidence of drug trafficking.

Defendant appeared on the scene 20 minutes after the officers arrived, knocked loudly and announced, "I am here for my stuff." Helton, seated near the door, shouted, "Run. It is the cops." Officers Crice and Reese, not knowing who was outside, drew their guns, threw open the door, and found defendant calmly standing with a beer can in his hand. Officer Crice seized defendant, pulled him into the apartment, placed him against the wall in a spread-eagle position, and undertook a pat-down search.

In defendant's right front pants pocket the officer felt a small round object, two inches long and a half inch in diameter; it seemed to him to be a plastic bottle. After completing the pat-down and determining defendant was unarmed, the officer, suspecting the object was contraband, questioned defendant about it. When defendant replied that the bottle contained pills, the officer quickly reached in and removed the bottle from defendant's pocket. The bottle, according to Officer Crice, contained one yellow and one green pill "of a configuration unfamiliar to me." He then placed defendant under arrest on a charge of possession of a controlled substance. Subsequent analysis demonstrated the two pills did not contain any controlled substance.

Despite defendant's repeated protestations that he had a valid prescription for the pills, the officers handcuffed him and took him to the Sunnyvale Department of Public Safety, where he was locked in a holding cell. He was, as the police euphemistically described it,

"momentarily lost" there for almost five hours, then finally booked. From the time of his arrest, about 10:30 p.m., through the time of his booking, 4:30 a.m., defendant repeatedly requested the officers to take him to his apartment so that he could produce the prescription for the pills. Finally the officers drove to the apartment with defendant, whose hands were now handcuffed in front of him rather than behind because the officers had evaluated him as "an extremely broken individual." While defendant searched his apartment for the prescription,[1] one of the policemen observed an open cigar box containing what appeared to be marijuana. Confronted with the box, defendant "completely lost his composure" and pointed out other items of contraband which formed the basis of the charge of which he was convicted.

■ "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' [Citations.] It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 858, 93 S.Ct. 2041].) As the officers had no search warrant to enter defendant's apartment, their discovery of the marijuana and other contraband may be justified only if defendant's request to be taken to his apartment constituted a valid consent to the officers' entry.

Defendant contends that the officers' entry was not validated by his request because it was the product of an illegal arrest. (*Wong Sun* v. *United States* (1962) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].) The question thus becomes whether the initial arrest of defendant was legal. The legality of that arrest, in turn, depends on whether Officer Crice had a right to seize the pills from defendant's pocket. The People argue that the pills were legally seized either as an incident to a valid arrest or pursuant to a proper pat-down search for weapons.

■ We first ascertain whether this was a search incident to a valid arrest. An officer may conduct a full body search only if the person is

---

[1]While defendant requested to be taken to his apartment so he could produce the prescription for his pills, and the officers took him there ostensibly for that purpose, legally it would have been impossible for the defendant to have had possession of a filled prescription. Pursuant to Health and Safety Code section 11167 the pharmacist filling a prescription must retain it in his possession. We can only surmise defendant and the police must have been searching for the original pill bottle, which should have reflected names of the pharmacy and prescribing physician and the prescription number.

committing or attempting to commit an offense in the officer's presence, or if the officer has reasonable cause to believe the person has committed a felony. (Pen. Code, § 836; *People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531].) Thus, we must determine whether Officer Crice had reasonable grounds to believe defendant had committed a felony or was presently committing a misdemeanor.

Arguing the former, the People rely heavily on *People* v. *Tenney* (1972) 25 Cal.App.3d 16 [101 Cal.Rptr. 419]. In *Tenney,* as in the present case, police officers were executing a search warrant in a third party's house when defendant arrived on the scene. Opening the door and seeing the officers, the defendant attempted to flee. The officers captured, arrested, and then searched him, finding contraband. The Court of Appeal upheld the search as incident to a valid felony arrest. Pointing to the large amount of narcotics already found in the house when the defendant appeared, the defendant's entry into the house without knocking, and his flight, the court reasoned: "the trial court was justified in concluding that these factors supplied the police with probable cause for believing that defendant had come to the premises for the purpose of committing a felony pertaining to the furnishing or possession of narcotics." (*Id.,* at p. 27.)

Similarly, in the present case the People argue that the narcotics found in Helton's house, defendant's announcement, "I am here for my stuff," and Helton's warning to defendant to run, all point to defendant's intent to commit some felony relating to narcotics. The People concede that "The mere presence of a person on the premises where officers have reason to believe there are narcotics will not justify either his arrest or a search of his person." (*People* v. *Boyd* (1959) 173 Cal.App.2d 537, 539 [343 P.2d 283].) Both the court in *Tenney* and the People here cite cases for the proposition that factors additional to mere presence may justify an arrest. In all the authorities cited, however, there was reason for the police to believe that the person arrested had recently committed an identifiable felony. (*Pierson* v. *Superior Court* (1970) 8 Cal.App.3d 510 [87 Cal.Rptr. 433] (possession of narcotics); *People* v. *Valdez* (1968) 260 Cal.App.2d 895 [67 Cal.Rptr. 583] (use of narcotics); *People* v. *Ramirez* (1960) 185 Cal.App.2d 301 [8 Cal.Rptr. 184] (sale of narcotics); *People* v. *Boyd* (1959) *supra,* 173 Cal.App.2d 537 (sale of narcotics); *People* v. *Soto* (1956) 144 Cal.App.2d 294 [301 P.2d 45] (possession of narcotics).)

By contrast, in the case at bar it is impossible to ascertain any specific statute that defendant had violated. The most that could be inferred

from the facts known to the officers is that defendant had some vague undefined or potential criminal intent. Assuming arguendo that the defendant's announcement, "I am here for my stuff," suggested he was more than an innocent social visitor, the police could still not legally arrest him for commission of any identifiable crime. At best, his statement could be interpreted as revealing that he harbored a subjective intention to buy narcotics. As he had not yet bought any drugs, there were no reasonable grounds to believe he was guilty of either possessing or selling contraband.[2] Defendant cannot be arrested merely for having a guilty intent unless such intent is accompanied by a guilty act.[3] Thus, the search and seizure of the pills from defendant cannot be upheld as incident to a valid felony arrest. *People* v. *Tenney,* insofar as it conflicts with this opinion, is disapproved.

Nor can the search be justified as incident to an arrest for a misdemeanor committed in the presence of an officer. The only crime that defendant could arguably have committed in view of the officers was visiting a place "where any controlled substances . . . are being unlawfully smoked or used with knowledge that such activity is occurring." (Health & Saf. Code, § 11365.) But defendant could not have been arrested on this ground for the simple reason that narcotics were not in fact being "smoked or used" when he arrived at the door. As in *People* v. *Perez* (1963) 219 Cal.App.2d 760, 763 [33 Cal.Rptr. 398], defendant "could not have known 'such activity' to be 'occurring' . . . when it was not occurring." Therefore we conclude that the search revealing the pills was not incident to any valid arrest and can be justified, if at all, only as part of a pat-down search for weapons.

■ Whatever authority Officer Crice may have had to conduct a routine pat-down search for weapons, however, was clearly exceeded by the seizure of the pill bottle. ■ As pointed out in *Terry* v. *Ohio* (1968) 392 U.S. 1, 29 [20 L.Ed.2d 889, 911, 88 S.Ct. 1868], "The sole justification of [a pat-down search] . . . is the protection of the police

---

[2]Dictum in *Pierson* v. *Superior Court* (1970) *supra,* 8 Cal.App.3d 510, supports this point. In *Pierson,* the court reasoned that officers had no probable cause to arrest a suspect at the time he was approaching the house of a known narcotics dealer, even though the police had reliable information that the suspect was about to buy drugs. Only when the suspect *left* the house, first clutching an object in his fist and then trying to conceal it from the officers, was there reasonable cause to arrest him for "possession of a narcotic or a restricted dangerous drug." (*Id.,* at p. 525.)

[3]Even the felony of burglary involves the act of *entering* a building with intent to commit a felony. (Pen. Code, § 459.) Defendant did not voluntarily enter Helton's apartment; he was catapulted inside by Officer Crice.

officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." An officer unable to point to specific and articulable facts suggesting that the object he touches during a pat-down search is a weapon may not seize the object. (*People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403].)

■ It is difficult to conceive of the specific and articulable facts which could transmute a small plastic pill bottle into a lethal weapon. As we noted in *People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659], "A box of matches, a plastic pouch, a pack of cigarettes, a wrapped sandwich, *a container of pills,* a wallet, coins, folded papers, and many other small items usually carried in an individual's pockets do not ordinarily feel like weapons." (Italics added.) (See also *People* v. *Brisendine* (1975) 13 Cal.3d 528, 544 [119 Cal.Rptr. 315, 531 P.2d 1099].)

Even if a pill bottle could in some fanciful or extraordinary circumstances feel like a weapon, in the present case it is quite clear that Officer Crice knew the bottle was not in fact a weapon. He admitted that he had no independent knowledge defendant was armed, and that he asked defendant about the bottle because "It has been my experience in situations of this type that those who are involved in the contraband scene quite frequently carry a small quote stash quote on their person, and it is very commonly carried in a pill bottle." Thus the case at bar is controlled by *Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1], in which while patting down a suspect an officer felt a lump in his shirt pocket. Although the officer was "pretty sure" the lump was not a weapon, he nevertheless seized the object on the suspicion that the suspect was carrying pills. We held, "The discovery of the unidentified lump in Patterson's shirt pocket during the pat-down search did not justify further intrusion into that pocket for the purpose of self-protection, as Officer Briscoe knew the soft object was not in fact a weapon." (*Id.,* at p. 154.) A similar conclusion is compelled in the case at bar.

■ It follows that the seizure of the pills was not justified on any grounds, and the arrest of defendant for possession of the pills was therefore illegal.[4]

---

[4] It is doubtful that Officer Crice had probable cause to arrest even if we were to assume the seizure of the pills was valid. Inasmuch as the officer did not recognize the

The only remaining question is whether defendant's invitation to the police to enter his apartment can be interpreted as a voluntary consent validating the officers' entry, despite the illegality of the prior police conduct. It is well established that " 'consent' induced by an illegal arrest or search is not voluntary." (*Kaplan* v. *Superior Court* (1971) *supra*, 6 Cal.3d 150, 155; *People* v. *Superior Court (Casebeer)* (1969) 71 Cal.2d 265, 273-274 [78 Cal.Rptr. 210, 455 P.2d 146]; *People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) In deciding whether an invitation was induced by an illegal arrest, we must determine " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun* v. *United States* (1962) *supra*, 371 U.S.471, 488 [9 L.Ed.2d 441, 455].)

Applying the foregoing principles, we conclude that defendant's invitation to the police "is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven* (1963) *supra*, 59 Cal.2d 713, 719.) It is true the police went to the apartment at the initiative of defendant, who was advised that he did not have to consent to a search. But this was not a case in which defendant walked up to policemen on the street and invited them into his residence. Nor did the officers have the slightest independent information that defendant may have had contraband in his apartment. This is a case in which defendant was handcuffed, illegally detained in a holding cell for several hours and—in apparent violation of Penal Code section 851.5—not given the opportunity to call an attorney. As Officer Crice admitted, by the time defendant was taken to his residence he was "an extremely broken individual." His request to return to his apartment was an understandable, desperate attempt to extricate himself from jail, where he was being illegally held for the crime of possession of a controlled substance, an offense of which he was innocent. Under such circumstances, the officers' entry into defendant's apartment can only be viewed as a direct product of the illegal arrest, and therefore invalid. The contraband found in defendant's apartment should therefore have been suppressed.

---

configuration of the pills, an arrest could only have been premised on a belief that persons carrying pills without a prescription therefor are guilty of a crime. Such a generalized belief is unreasonable. As discussed in *Tinney* v. *Wilson* (9th Cir. 1969) 408 F.2d 912, 917, there are innumerable nonprescriptive pills, including vitamin and iron supplements, available for over-the-counter sale in pharmacies and markets.

The judgment (order granting probation) is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.