[No. B035623. Second Dist., Div. Six. Nov. 9, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ARTHUR SHIELDS, Defendant and Appellant.

**COUNSEL**

Whipple, Viele & Mays, Whipple & Viele and Edward A. Whipple for Defendant and Appellant.

Michael D. Bradbury, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**STONE (S. J.), P. J.—** Does an employer's consent to a warrantless search of its premises eliminate the requirement that the police have a reasonable suspicion of criminal activity of an employee before he may be detained and questioned? We hold it does not. Employers have the right to consent to a police search for drugs on their premises, but authorities may not detain an employee without at least a reasonable suspicion that he is involved in some criminal activity.

Mark Arthur Shields, a supervisor of the mailroom of the Star Free Press, a newspaper, seeks review of a municipal court order denying suppression of evidence. (Pen. Code, § 1538.5, subd. (j).) He contends that his detention by the police was unlawful both *ab initio* and in its duration, and that the police used subterfuge to obtain incriminating evidence leading to his arrest for being under the influence of a controlled substance. (Health & Saf. Code, § 11550.) Since we find he was unlawfully detained and that all evidence leading to his arrest flowed directly from that seizure, we need not consider other issues. We reverse the trial court's order denying the motion to suppress.[1]

---

[1] We granted Shields's petition to transfer this matter to the Court of Appeal for hearing and decision after the Superior Court Appellate Department, in an opinion certified for publication, affirmed the denial of his motion to suppress. (Cal. Rules of Court, rules 62 & 63.)

## FACTS

Viewed in the light most favorable to the order denying suppression (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]), the record of the suppression hearing reveals that after a four-month investigation by a private investigator hired by the Star Free Press in which he infiltrated the work force and made "controlled buys" of narcotics, twenty to twenty-five police officers went to the Star Free Press newspaper offices, conducted a search of the premises, and arrested eight of its employees. Shields, the mailroom supervisor, was not one of the eight targeted for arrest.

Concerned about suspected drug use at the Star Free Press, management had given the police permission to enter and search common areas. Additionally, management asked the police to check whether any employee was under the influence of any type of drugs. No permission was given to search private areas, e.g., employee's individual desks, nor could it be given.

Sergeant Bowman testified that, during the course of arresting targeted individuals, the police "shut down the production in that particular part of the plant, the press rooms, the mail room, the circulation area; everything came to a halt at one of the busiest times of the day for the newspaper." The sergeant stated that no one was free to leave. Sergeant Bowman sought out Shields to explain their presence. He advised Shields that they were conducting a narcotics investigation of employees in the mailroom and that if Shields had any drugs, he should produce them and, if he did so, he would not be charged. Shields replied that he had a pill in his desk and led the officer there. With Shields's consent, Bowman searched Shields's work area but found only an empty prescription bottle. During the few minutes of search of Shields's desk, he observed nothing about Shields which would lead him to believe that he was under the influence of a controlled substance. Meanwhile, other police officers detained approximately 25 of the remaining employees and also conducted a search of the common areas.

While Bowman was concluding the search of Shields's desk and approximately 15 minutes after the officers entered the plant, Detective Romero approached Shields, requested that he be seated and asked if he had used any cocaine recently. Detective Romero had no prior information that would lead him to believe appellant was involved in any narcotics transactions.[2] Romero said that Shields had been walking back and forth and

---

[2] Sergeant Bowman testified that he had been told that the private investigator had seen Shields under the influence of narcotics. However, when defense counsel stated that he intended to call the private investigator as a witness and represented that the investigator would deny giving that information, the district attorney elected not to use that information

appeared nervous. Shields replied that he had taken cocaine the night before. Detective Romero looked at Shields's pupils, compared them to Sergeant Bowman's and asked whether Shields was certain he had used the cocaine the night before. Shields replied, "No, I used it this morning."

Romero, noting Shields's dilated pupils and red nostrils, decided that Shields was under the influence of cocaine and advised him that if he had any cocaine on him, he would be well advised to turn it over, in which event he would not be prosecuted for drug possession. Shields gave him a bindle of cocaine. True to the literal word, Shields was prosecuted not for possessing cocaine, but rather for being under the influence of it.

In denying suppression, the trial judge indicated, ". . . that by analogy to the execution of a search warrant the brief detention to allow the officer to conduct . . . the business that they came to conduct, is not unreasonable, . . ." Additionally, the court expressly ruled that: (1) management could not give consent to detain individuals; (2) Shields was detained when Bowman made initial contact; and (3) thereafter, Detective Romero made observations allowing him to ". . . further detain and further his investigation of Mr. Shields as to whether Mr. Shields was under the influence of a controlled substance." The trial court determined that Shields's consent to search was voluntary. Although the court acknowledged there were no search or arrest warrants, it believed that that would have made no difference in its ruling.

## DISCUSSION

 In reviewing an order denying a motion to suppress, we defer to the fact-finding of the trial court if there is substantial evidence to support it. (*People* v. *Leyba, supra,* 29 Cal.3d 591, 596-597.) However, we are not bound by the substantial evidence standard in reviewing the trial court's decision whether or not a search or detention was reasonable; instead, it is " 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' " (*Id.,* at p. 597.)

 The trial court analogized the instant case to the execution of a search warrant. In *Michigan* v. *Summers* (1981) 452 U.S. 692, 703-704 [69 L.Ed.2d 340, 350, 101 S.Ct. 2587], the United States Supreme Court indicated that, "(t)he existence of a search warrant, . . . provides an objective justification for the detention [of the premises' occupants]. A judicial officer

---

as a basis of probable cause or reasonable suspicion. The trial court specifically stated that it would ignore that information as the probable cause for detention.

has determined that police have probable cause to believe that someone in the home is committing a crime. . . . [and] has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant."

"(I)n *Michigan* v. *Summers* . . . [the court] identified three law enforcement interests that justified limited detention of the occupants of the premises during execution of a valid search warrant: 'preventing flight in the event that incriminating evidence is found,' 'minimizing the risk of harm' both to the officers and the occupants, and 'orderly completion of the search' [citation]." (*United States* v. *Place* (1983) 462 U.S. 696, 704 [77 L.Ed.2d 110, 119, 103 S.Ct. 2637].) The additional intrusion requiring the occupants to remain during the search is constitutionally reasonable because a magistrate has determined that probable cause exists to justify a search. (*People* v. *Gabriel* (1986) 188 Cal.App.3d 1261, 1264 [233 Cal.Rptr. 769], citing *Michigan* v. *Summers, supra,* 452 U.S. 692, 701, 704-705 [69 L.Ed.2d 340, 349, 351].) "The context of a particular law enforcement practice, of course, may affect the determination whether a brief intrusion on Fourth Amendment interests on less than probable cause is essential to effective criminal investigation." (*United States* v. *Place, supra,* 462 U.S. 696, 704 [77 L.Ed.2d 110, 119].)

 The People argued that the rationale for the rule articulated in *Michigan* v. *Summers, supra,* is equally apposite in the consent context since consent is an established exception to the requirements of both a warrant and probable cause to search. (See *People* v. *Leib* (1976) 16 Cal.3d 869, 873 [129 Cal.Rptr. 433, 548 P.2d 1105]; *People* v. *Tremayne* (1971) 20 Cal.App.3d 1006, 1014-1015 [98 Cal.Rptr. 193].) A search is not unreasonable where it is made under a warrant issued upon probable cause or with consent of the person whose premises are searched. (*People* v. *Tremayne, supra,* 20 Cal.App.3d 1006, 1015.) Consent to search confers authority to search. (*Ibid.*)

 It is uncontested that the Star Free Press could give the police consent to search its premises. The question is whether the police could do more than keep the employees from interfering with the search and arrests. Issuance of a search warrant provides an objective justification for detention of persons on the premises because a judicial officer has determined that the police have probable cause to believe someone in that place is committing a crime. (*Michigan* v. *Summers, supra,* 452 U.S. 692, 703 [69 L.Ed.2d 340, 350].) We know of no authority, however, that permits one person to

"consent" to another person's being detained without even reasonable suspicion that the person is or has been involved in criminal activity.

■ Here, the officers' purposes were: (1) to arrest certain named individuals; (2) search the premises for narcotics; and (3) investigate whether anyone was under the influence of narcotics. Does information that some persons have been suspected of being under the influence of drugs on the job give the police the right to detain every employee for investigation? We think not. A person may not be detained even momentarily without reasonable, objective grounds for doing so. (*Florida* v. *Royer* (1983) 460 U.S. 491, 498 [75 L.Ed.2d 229, 236-237, 103 S.Ct. 1319].)

■ The People argue that the presence of the police is more analogous to a nonriotous "crowd control" in which the police wish to explain to the crowd why they are there, and that their initial contact with Shields was not a detention. The People ignore the facts. Twenty-five uniformed policemen entered the building, all work was stopped, and no one was free to leave.

■ As the California Supreme Court explained in *In re James D.* (1987) 43 Cal.3d 903 [239 Cal.Rptr. 663, 741 P.2d 161], there are three different categories or levels of police "contacts" with individuals, ranging from the least to the most intrusive, for purposes of Fourth Amendment analysis. First, there are the "consensual encounters" which result in no restraint of an individual's liberty in any way and which may be initiated by police officers even without "objective justification." (*Id.,* at p. 911, citing *Florida* v. *Royer, supra,* 460 U.S. 491, plur. opn. of White, J.) Second, there are detentions strictly limited in duration, scope and purpose which the police may undertake "'if there is an articulable suspicion that a person has committed or is about to commit a crime.'" (*In re James D., supra,* at p. 911; *Florida* v. *Royer, supra,* at p. 498 [75 L.Ed.2d at pp. 236-237].) Third, there are seizures which exceed permissible limits of detention, that are comparable to an arrest, and are constitutionally permissible only if the police have probable cause to arrest the individual for a crime. (*James D., supra,* at p. 912; *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)

■ As the California Supreme Court stated in *Wilson* v. *Superior Court, supra,* and recounted in *In re James D., supra,* it appears that a substantial majority, if not all, of the United States Supreme Court justices agree with the standard set forth by Justice Stewart in his separate opinion in *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870] that "'"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he

was not free to leave." ' " (*James D., supra,* 43 Cal.3d at p. 913; *Wilson, supra,* 34 Cal.3d at p. 790, fn. omitted.) At the time Shields consented to the search of his desk and took Bowman to his work area, would a reasonable person in his position believe that he was not free to leave? Common sense dictates that no reasonable person would have believed he was free to leave. (See *Wilson* v. *Superior Court, supra,* 34 Cal.3d 777, 790-791.)

■ Substantial evidence supports the trial court's finding that Shields was detained at the time Sergeant Bowman first spoke to him. However, our independent application of constitutional principles to the facts leads us to a different conclusion than that of the trial court; since the officer did not have specific and articulable facts or a reasonable suspicion causing him to suspect that Shields was involved in criminal activity at the time he approached him, the detention was illegal and all evidence leading to his arrest flowed directly from that illegal detention, including his consent to search which facilitated further police contact with him.

As stated in *In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957], a person's Fourth Amendment rights are implicated and he is entitled to the rules discussed if he is stopped or detained because the officer suspects he may be personally involved in some criminal activity. Similar safeguards, however, are not required if the officer acts for other proper reasons. (*Ibid.*) Examples of these reasons might be administrative searches, airport preboarding searches, OSHA inspections, and immigration checkpoints. (See *Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321 [241 Cal.Rptr. 42, 743 P.2d 1299].) The United States Supreme Court has also upheld factory sweeps for illegal aliens conducted in such a manner that the employees were free to continue working and move at will within the factory and there was no evidence they were restrained from leaving or would be detained if they gave truthful answers. (*INS* v. *Delgado* (1984) 466 U.S. 210 [80 L.Ed.2d 247, 104 S.Ct. 1758].)

Even in the area of factory sweeps for illegal aliens, however, where there is statutory authority for immigration agents to check for proper identification, courts have interpreted *Delgado* as "not authoriz[ing] detention without individualized and articulated grounds for each incident." (*Martinez* v. *Nygaard* (9th Cir. 1987) 820 F.2d 1024, 1029.) An INS officer must have an objectively reasonable suspicion that the particular worker is an illegal alien. (*Ibid.*; accord *Int. Molders' & Allied Workers' Local U.* v. *Nelson* (9th Cir. 1986) 799 F.2d 547, 553.)

■ The People contended there were no "fruits" to be suppressed since Shields's arrest for being under the influence of cocaine was independent of the search for narcotics. We disagree. ■ Consent induced by an illegal

detention is not voluntary. (*People* v. *Leib, supra,* 16 Cal.3d 869, 877.) Detective Romero saw Shields pacing nervously while Bowman was finishing his search. Detective Romero had no more right to detain and question Shields whether he had used cocaine than Bowman did initially to ask Shields to "voluntarily" turn over any drugs. His arrest was not by means sufficiently distinguishable to purge the primary taint. (*Id.,* at p. 877; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].)

We reverse the order denying Shields's motion to suppress.

Gilbert, J., and Abbe, J., concurred.

A petition for a rehearing was denied December 7, 1988, and respondent's petition for review by the Supreme Court was denied February 16, 1989.