Filed 4/17/13  P. v. Hood CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COURTNEY JEAN HOOD,<br><br>    Defendant and Appellant. | D061078<br><br><br><br>(Super. Ct. No. SCD215929) |

APPEAL from a judgment of the Superior Court of San Diego County, Roger W. Krauel, Frederick Maguire and Howard H. Shore, Judges.  Affirmed.

INTRODUCTION

Courtney Jean Hood[1] pleaded no contest to three counts of using personal identifying information of another (Pen. Code,[2] § 530.5, subd. (a)) and one count each of burglary (§ 459), grand theft (§ 484g, subd. (a)), acquiring access cards of four or more

---

[1]    Although official court documents list appellant's last name as "Hoop," the trial court determined her true last name was "Hood."

[2]    Further statutory references are also to the Penal Code unless otherwise stated.

people (§ 484e, subd. (b)), possessing forged items (§ 475, subd. (a)), possessing completed paper (§ 475, subd. (c)), and receiving stolen property (§ 496, subd. (a)).  The trial court suspended imposition of sentence and granted Hood probation, conditioned upon her serving 365 days in custody.

Hood appeals, contending we must reverse her conviction and allow her to withdraw her guilty plea because the trial court erroneously denied her pretrial motion to suppress the evidence against her.  She additionally requests we independently review the the transcript of an in camera proceeding conducted by the trial court under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)[3] to determine whether the trial court erred in finding certain police officers' personnel records contained no discoverable information.

We conclude the trial court did not err in denying Hood's suppression motion.  In addition, we have reviewed the transcript of the *Pitchess* proceeding and conclude the trial court did not err in finding the officers' personnel records contained no discoverable information. We, therefore, affirm the judgment.

---

[3]     The Legislature essentially codified *Pitchess* in Penal Code sections 832.5, 832.7, 832.8 and Evidence Code sections 1043 through 1047.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. 3, 1226.)

*Prosecution Evidence*

On September 3, 2008, San Diego Police Sergeant Paul Salas and police officers Carlos Navarro and Melinda McArthur went to a hotel to investigate a disturbance of the peace incident. They met with the hotel manager who told them several people in a room registered to "Kerri Miller" had caused a disturbance regarding their unpaid restaurant bill. The manager also told them he had seen narcotics paraphernalia in the room and wanted the people staying there to leave. He asked the people in the room to leave the premises, but not all of them complied with his demand.

Accompanied by the manager, the officers went to the room. The manager knocked on the door. When no one responded, Navarro knocked on it. Hood opened a sliding glass door on the second floor of the room. Salas asked her to come to the front door. About half a minute to a minute later, she opened the front door.

The manager told Hood she had to leave the premises and she agreed to do so. Navarro asked Hood if her name was Kerri Miller. She told him her name was Courtney Hood. Navarro asked to see her identification. As she turned to retrieve her identification, he asked, "May we come inside?" She said, "Yes, you may[,]" and Navarro, McArthur, and the hotel manager entered the room.[5]

---

[4]   We derive our summary of facts from the evidence presented at the hearing on the motion to suppress.

[5]   Navarro testified he asked Hood if he could enter the room. McArthur testified Navarro asked Hood if they all could enter the room.

The officers saw numerous items of clothing hanging in the open closet. The price tags were still attached to the items. The officers also saw several duffel bags, purses, and notebook bags throughout the room.

Hood gave Navarro a student identification card identifying her as Courtney Hood. While waiting for the results of a records check, Navarro talked with Hood for about 15 minutes.[6] She told him she arrived at the hotel the night before. After obtaining the records check results, Navarro asked Hood if he could search the room, including the bed, the couch, the closet, and the furniture. He followed his usual pattern of questioning in such circumstances: Is there anything illegal in this room I should know about. What's your property? Do you know who the other items belong to? Do you have a problem with me searching the room? She hesitated at first and then consented to the search.

Navarro had Hood sit on the couch while he conducted the search. The officers did not handcuff her or use any threats, display any weapons, or otherwise coerce her to consent to the search.

McArthur initially watched and spoke with Hood while Navarro conducted the search. McArthur noticed Hood waved her hands around a lot, spoke extremely rapidly, and jumped from one topic to another. Based on her training and experience, McArthur believed Hood was under the influence of a controlled substance.

---

[6]     Navarro testified it took awhile to receive the results of the records check. McArthur testified it took 30 seconds.

While searching the room, Navarro found a clear plastic baggie containing a white residue in the bathroom next to the toilet.[7] It was visible from where McArthur stood in the main part of the room.[8] She also went into the bathroom and observed it. The officers did not inform Hood of their discovery of the baggie. In addition, the prosecution never charged Hood with any narcotics related offenses in this case.

After Navarro found the baggie and a check belonging to a crime victim, McArthur joined the search. The officers found three bags from a clothing retailer with the store price tags still on them, credit cards, several identifications belonging to different people along with their personal information and pictures, checks, checkbooks, blank check paper, software to create checks, passports, and a stolen gun. McArthur conducted a records check on the identifications and discovered four of them belonged to people who reported being victims of property crimes. The officers then arrested Hood. The entire encounter from the time the officers entered the hotel room until they arrested Hood was around 30 to 40 minutes.

---

[7] McArthur's testimony occurred over the course of two days, approximately six weeks apart. On her first day of testimony, she indicated the sequence of events was that Navarro obtained consent to search and found the baggie and a stolen check. On her second day of testimony, she indicated the sequence of events was that Navarro walked around the room while waiting for the records check on Hood's identification, found the baggie almost immediately and within two minutes of their entrance into the hotel room obtained consent to search specific areas where stolen items were found.

[8] McArthur gave conflicting testimony on this point as well. She initially testified she could see the plastic baggie from where she stood. She later testified she could not see it from where she stood and had to go into the bathroom to see it.

*Defense Evidence*

Hood testified she arrived at the hotel a day earlier and was a guest of the people who rented the room. She was invited by her wealthy friend, "Jason." Although she had known him for years, she could not recall his last name, address, or current phone number. She also did not know the last names of anyone else staying in the room.

She testified she had been taking a shower when she heard the knock on the hotel room door. She put on a robe, peeked out the sliding glass balcony door, saw Salas and cracked opened the balcony door. Salas ordered her to open the room door. She shut the balcony door, put on some clothes, opened the room door, and saw Navarro and McArthur. The officers asked her if she was Kerri Miller. She told them she was not and told them her name. They asked for her identification and she told them she would get it for them. When she went to retrieve her identification, they followed her into the room. They did not ask for her consent to enter and she did not give them permission to come inside the room.

She gave the officers her identification and answered some questions about her business. While she was doing this, her phone rang. Navarro told McArthur to answer the phone and pretend to be Hood. When McArthur signaled to Navarro that it was Jason on the phone, Navarro left the room to look for him.

While Navarro was out, McArthur and Hood began taking items out of the room and into the hallway. After Navarro returned and indicated he could not find Jason, he told Hood he was going to search everything. Hood did not consent to the search.

6

Hood testified she did not see Navarro find the plastic baggie and no one told her about it or asked her about it at the time. She also denied being under the influence of anything that night. She admitted that, after her arrest in this case, she pleaded guilty to an "under the influence" misdemeanor. She also admitted she had previously been arrested while on a boat where cocaine and methamphetamine were found and that she had some marijuana in her purse at the time.

DISCUSSION

I

*Motion to Suppress*

Before trial, Hood moved under section 1538.5 to suppress the evidence against her. The trial court denied the motion, finding the police officers entered Hood's hotel room after she gave her free and voluntary consent for them to do so.

Hood contends her initial consent to the entry of police officers into her hotel room did not extend to her bathroom where an officer found a plastic baggie containing white residue. Consequently, her second consent to police officers searching her hotel room was invalid and the trial court should have granted her motion to suppress. We conclude there is no merit to this contention.

"The standard of review on a motion to suppress is well established. The appellate court views the record in the light most favorable to the ruling and defers to the trial court's factual findings, express or implied, when supported by substantial evidence. But in determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, the appellate court exercises its independent judgment.

7

[Citations.]  Appellate review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling."  (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1011.)

"The Fourth Amendment prohibits only those searches and seizures that are unreasonable.  (*Chapman*, *supra*, 204 Cal.App.4th at p. 1011, citing *Florida v. Jimeno* (1991) 500 U.S. 248, 250, and *Brigham City v. Stuart* (2006) 547 U.S. 398, 403.)  Generally, "a search conducted without a warrant is per se unreasonable under the Fourth Amendment."  (*Chapman*, at p. 1011.)  However, one of the established exceptions to the warrant requirement is "when consent is given by one authorized to give it."  (*Id.* at pp. 1011-1012, citing *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219; *People v. Leib* (1976) 16 Cal.3d 869, 873.)  "By consenting to a warrantless search, one waives the right protected by the Fourth Amendment."  (*Chapman*, at p. 1012.)

In this case, substantial evidence in the record shows Hood consented to Navarro and McArthur's entry into the hotel room.  Substantial evidence in the record also shows Hood consented to the officers' search of the areas of the hotel room where the officers found the unlawful items.  Whether Navarro requested Hood's consent to search before or after he spotted the baggie in the bathroom does not affect the validity of Hood's consent because, according to Hood, she did not know about the baggie and the officers never told her of its discovery.  Accordingly, Hood has not established the officers obtained her consent to search the hotel room by exploiting unlawful conduct or, concomitantly, that the trial court improperly denied her suppression motion.  (See *People v. Mayfield* (1997)

8

14 Cal.4th 668, 760; *People v. Williams* (1988) 45 Cal.3d 1268, 1300, abrogated on another point as recognized in *People v. Abilez* (2007) 41 Cal.4th 472, 518-519 & fn. 10.)

II

*Review of Pitchess Proceeding Transcript*

Before trial, Hood moved under *Pitchess*, *supra*, 11 Cal.3d 531, and Evidence Code sections 1043 and 1045 for discovery of information in the personnel records of the officers involved in the search of her hotel room. The trial court granted the motion, agreeing to review the personnel records to determine whether they contained discoverable information related to acts of dishonesty or excessive force. After reviewing the records in camera, the trial court determined they contained no discoverable information.

At Hood's request, and with no objection by the People, we have independently reviewed the sealed transcript of the trial court's in camera review. (See, e.g., *People v. Hughes* (2002) 27 Cal.4th 287, 330.) We conclude the trial court did not err in finding there was no discoverable information in the officers' personnel records.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

NARES, J.

10