**UNITED STATES of America,**
**Plaintiff,**

v.

**Manuel GUADARRAMA a.k.a. Juan Sotelo, and Rey Garcia, Defendants.**

**No. 00–CR–124.**

United States District Court,
E.D. Wisconsin.

Jan. 12, 2001.

---

Michael Schnake, Miller & Stansberry, Milwaukee, WI, for Manuel Guadarrama.

John Miller Carroll, John Miller Carroll Law Office, Wind Lake, WI, for Rey Garcia.

Brian Resler, U.S. Dept. of Justice (ED–WI), Office of the U.S. Atty., Milwaukee, WI, for U.S.

### DECISION AND ORDER

ADELMAN, District Judge.

This case raises several questions involving the Fourth Amendment, including the constitutional status of "all persons" search warrants.

## I. PROCEDURAL HISTORY AND STANDARD OF REVIEW

Acting pursuant to a search warrant authorizing the search of all persons on the premises of the Guadalajara Tavern, law enforcement officers searched defendant Manuel Guadarrama, also known as Juan Sotelo, on June 28, 2000, and found cocaine and other incriminating evidence in his pocket. Guadarrama and his co-defendant, Rey Garcia, are each charged with one count of possession with intent to distribute more than 500 grams but less than 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Guadarrama filed a motion to suppress the evidence found on his person, and Garcia has requested permission to adopt the motion. U.S. Magistrate Judge Aaron E. Goodstein conducted an evidentiary hearing on August 15, 2000.

Judge Goodstein recommended that I find the search warrant unconstitutional, but nonetheless recommended that I find the evidence admissible, either as supported by independent probable cause, or under the "good faith" exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The government did not file an objection to the portion of the recommendation regarding the constitutionality of the search warrant, and so I review that portion only for clear error. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir.1999). Guadarrama filed an objection to the ultimate recommendation to deny his motion to suppress. My review of that portion of the recommendation is therefore de novo. 28 U.S.C. § 636(b)(1)(A) & (C); *United States v. Raddatz*, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Nonetheless, Guadarrama's objection provides no specific reasons that he takes exception to certain portions of the analysis. A party objecting to a magistrate judge's recommendation must provide a written objection which "*specifically identif[ies]* the portions of the proposed findings, recommendations, or report to which objection is made *and the basis for such objection.*" E.D. Wis. Local Rule § 13.03(c) (emphasis added). Failure to specify the legal or factual basis for an objection relieves this court of the obligation to conduct a de novo review of that legal or factual issue. *Johnson*, 170 F.3d at 742.

## II. FACTUAL BACKGROUND

### A. Search Warrants and Supporting Affidavit

After a five-month investigation, the High Intensity Drug Trafficking Area ("HIDTA") Task Force sought two drug search warrants on June 27, 2000, the first for the Tavern—located on the south side of Milwaukee—and the second for the upstairs residence over the Tavern. The supporting affidavit described three controlled buys of cocaine made at the Tavern by a confidential informant. (Gov't Ex. 1, Evid. Hr'g [hereinafter "Aff."] at 1.) At the first controlled buy, in late January 2000, the informant reported that he bought cocaine from a Hispanic male patron who told him that he could come back to buy more cocaine. At the second controlled buy, six weeks before officers sought the search warrants, the informant sought to buy cocaine from the bartender, and the bartender spoke with a patron, who told the informant that he "would be right down" with the cocaine. The patron then left the Tavern through a side door and returned in about two minutes with cocaine. At the third controlled buy, three days before officers sought the search warrants, the informant sought to buy cocaine from someone in the Tavern named Jaime Molina–Carrillo; Molina–Carrillo spoke with a Hispanic male associate, who exited the side door and returned within five minutes with cocaine. (According to vehicle registration records, Molina–Carrillo lived in the upstairs residence.) Milwaukee Police Department Detective Carlos Negron, assigned to the HIDTA Task Force, was conducting surveillance outside the Tavern during this third controlled buy, and saw the associate leave the Tav-

ern and enter the upper flat. Negron stated in his affidavit that the person he saw matched the informant's description of the Hispanic male associate, and later testified that he recognized this associate as defendant Garcia. (Evid. Hr'g Tr. [R. 34] [hereinafter "Tr."] at 46.)

Both the Tavern and Residence warrants are on forms with notations at the bottom indicating that they were printed from a computer file. The relevant form language is as follows:

> [Affiant,] Showing probable cause that on _____, 1999, in the County of Milwaukee, there is now located and concealed in and upon certain premises, located within the ____ of _____ in said County, occupied by _____, and more particularly described as follows: DESCRIBE PREMISES: _____
>
> _____,
>
> search to include all storage areas accessible to _____ **and all persons present on premises,** certain goods, chattels and property, to-wit: DESCRIBE OBJECTS OF SEARCH:
>
> . . . .
>
> Now, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith to search the said premises and/or the said person(s) for said things, and take possession thereof, if found.

(Gov't Ex. 1, Evid. Hr'g) (emphasis added). The language directing officials to search "all persons present on premises" is thus part of the HIDTA Task Force standard cocaine search warrant form.[1]

### B. Execution of the Search Warrants

Police executed the two warrants early the next afternoon, Wednesday, June 28,

---

1. Similar language is used in more than just drug search warrant forms. An HIDTA Task Force search warrant for weapons and ammunition, submitted to the court with a motion to suppress in an unrelated case, *United States v. Lagrone*, No. 00–CR–146 (E.D.Wis. Sept. 7, 2000), is substantially similar, with the description of the premises concluding, "Search to include . . . all persons present on premises."

The supporting affidavit, also with a notation at the bottom indicating that it was prepared from a computerized form, concludes, "That affiant, based upon affiant's training and experience, seeks permission to search all persons on the premises because: a) the premises in question is a private residence and weapons and other weapon-related contraband may easily be secreted on one's person." There is no "b)."

2000, at about 12:45 p.m. Six or eight West Allis Police Department officers executed the Tavern warrant, while six or eight Milwaukee Police officers simultaneously executed the Residence warrant.

When West Allis police entered, they seized, handcuffed, put face-down on the floor with their hands behind them, patted down, and searched the pockets of all of the eight or nine Tavern patrons present. Firearms were trained on each patron throughout this process, which lasted some ten to fifteen minutes. (Tr. at 94–95.)

West Allis officers followed what they described as "basic search warrant protocol" and "standard operating procedure," (Tr. at 56, 71), which involved handcuffing all persons found at the place to be searched and patting them down for weapons. One officer searched Guadarrama and found and removed a set of keys from his pocket; the keys were then apparently returned to Guadarrama. After the premises were secured and officers considered the Tavern safe—a period of about five minutes from the beginning of the execution of the search warrant—West Allis Detective Sergeant Charles Unger entered the Tavern. (Id. at 53, 54, 56.) All patrons were kept lying on their faces, handcuffed, and with weapons pointed at them. (Id. at 94–95.)

After another five minutes, Detective Negron directed Detective Unger to arrest Guadarrama and Garcia. Detective Unger then re-searched Guadarrama, and found not only the keys but also eight small packets, or bindles, of cocaine in Guadarrama's right front pocket. Detective Unger later tried the keys in the lock of the door to the upstairs residence, and found that one key fit.

Detective Negron based his decision to have Guadarrama and Garcia arrested upon two factors. First, he had seen both Guadarrama and Garcia—in the span of a

half hour earlier that same day—each twice exit the Tavern, go to the upstairs residence, use a key to enter, and then return to the Tavern within minutes. (Id. at 24–25.) Second, during their search of the upstairs residence, officers found cocaine and other drug paraphernalia. (Id. at 29).

## III. ANALYSIS

Defendant Guadarrama seeks to suppress the cocaine and the incriminating key found in his pocket as the product of unconstitutional searches. The government has proffered a variety of theories to support its position that the search and seizure were legal. Because this is a federal prosecution, I apply federal standards regardless of how a state court might rule, even though the search was made by state officers executing a state search warrant. *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *United States v. Singer*, 943 F.2d 758, 761 (7th Cir.1991).

### A. "All Persons Present" Search Warrant

The government first contends that its search of Guadarrama was justified because the Tavern search warrant required officers to search "all persons present on premises." The magistrate judge recommended that I find this portion of the warrant invalid. Although I review this portion of the recommendation only for clear error (because the government did not file an objection), I address the issue in detail because of its importance.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Neither the Supreme Court nor the Seventh Circuit has addressed the constitutionality of "all persons" warrants under the Fourth Amendment.[2]

---

2. I use the term "all persons" warrant to refer to warrants authorizing the search of every person on a stated premises. I do not

include warrants authorizing searches of every person on a stated premises reasonably

### 1. Treatment of "All Persons" Warrants in Other Jurisdictions

The question of such warrants' constitutionality has been raised in some forty-four jurisdictions. Of these, only Wisconsin authorizes an "all persons" warrant to be issued on less than probable cause as to a defendant.

#### a. Facially Unconstitutional

Among the other forty-three jurisdictions, the minority view, held or suggested by eight jurisdictions, is that "all persons" warrants are facially unconstitutional because of their resemblance to general warrants. The Fourth Amendment grew out of colonists' experiences with the use of general warrants by English authorities and the related writ of assistance by colonial authorities. *Stanford v. Texas*, 379 U.S. 476, 482–486, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). General warrants were issued under English Licensing Acts and authorized the Surveyor of the Press to search and seize all persons whom they believed to be "authors, contrivers, printers, ... publishers, dispensers, & concealers of treasonable, schismatical, seditious or unlicensed books." *Marcus v. Search Warrants of Property*, 367 U.S. 717, 726–27, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961) (quoting

Siebert, *Freedom of the Press in England, 1476—1776* at 256 (citing Entry Book, Chas. II, 1664, Vol. 21, at 21; also Vol. 16 at 130)). Because of the uncomfortable similarity between an "all persons" warrant and a general warrant, three states have held or indicated in dicta that "all persons" warrants are unconstitutional general warrants,[3] and another five jurisdictions have held or indicated that such warrants do not provide a sufficiently particular description under the Fourth Amendment.[4]

#### b. *De Simone:* Requiring Probable Cause That All Persons Likely to Be Present Are Involved in Criminal Activity

Thirty jurisdictions adhere to the majority view, expressed in the leading case, *State v. De Simone*, 60 N.J. 319, 288 A.2d 849 (1972). *De Simone* holds that an "all persons" search warrant is authorized under the Fourth Amendment only if the supporting affidavit establishes probable cause that evidence of illegal activity will be found upon *every* person likely to fall within the warrant's scope.

On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place

---

believed to be engaged in criminal activity. Such warrants are discussed in 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5(e) at 548 (3d ed.1996) and in Kimberly C. Simmons, Annotation, *Sufficiency of Description in Warrant of Person to Be Searched*, 43 A.L.R. 5th 1, § 14 at 71–83 (1996).

3. *State v. Lewis*, 115 Ariz. 530, 566 P.2d 678 (1977) (dicta) (search of persons only incidentally on premises and neither named nor described in warrant would be general warrant); *State v. Cochran*, 135 Ga.App. 47, 217 S.E.2d 181, 183–84 (1975) ("persons" warrant a general warrant); *Crossland v. State*, 266 P.2d 649, 651 (Okla.Crim.App.1954) ("every person" warrant a general warrant; decision based solely on state constitution).

4. *United States v. Johnson*, 475 F.2d 977, 979 (D.C.Cir.1973) (dicta) ("To obtain a warrant permitting the search of anyone found on the premises would, apart from being unnecessary in these circumstances, appear to be

unsupportable as lacking the particularity constitutionally required."); *People v. Tenney*, 25 Cal.App.3d 16, 101 Cal.Rptr. 419, 423 (1972) ("unidentified persons" warrant lacked reasonable particularity), *disapproved of on other grounds by People v. Leib*, 16 Cal.3d 869, 129 Cal.Rptr. 433, 548 P.2d 1105, 1108 (1976); *State v. Wise*, 284 A.2d 292, 294 (Del.Super.Ct.1971) ("occupants" warrant insufficiently specific); *Johantgen v. Commonwealth*, 571 S.W.2d 110, 111–12 (Ky.Ct.App. 1978) ("any other person" warrant insufficiently specific); *People v. Jackson*, 180 Mich. App. 339, 446 N.W.2d 891, 893 (1989) ("other persons" warrant lacked required particularity), *rev'd on other grounds, People v. Russo*, 439 Mich. 584, 487 N.W.2d 698, 706 n. 32 (1992). *See also State v. Hamilton*, 173 Ariz. 196, 840 P.2d 1061, 1063 (1992) (applying "all persons" warrant decisions to find insufficiently particular a warrant to search "Jim, a black male" at particular address).

should depend upon the facts. A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

.... So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment. The evil of the general warrant is thereby negated.

*Id.* at 850, 288 A.2d 849. Professor La-Fave approves the *De Simone* standard as being "[u]nquestionably ... correct" and expresses the test thus:

[T]he question is whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person.

2 LaFave, *Search and Seizure* § 4.5(e) at 546, 547. In other words, the risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed. *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26, 34 (1975).

All three federal courts to address "all persons" warrants, including two courts of appeals, have used this standard,[5] and a fourth federal court (also a court of appeals) has implicitly adopted it.[6] In addition, twenty-three states (including New Jersey and the District of Columbia) use *De Simone*'s standard,[7] and another three have implicitly adopted it.[8]

**5.** *Marks v. Clarke,* 102 F.3d 1012, 1029 (9th Cir.1996) ("a warrant to search 'all persons present' for evidence of a crime may only be obtained when there is reason to believe that *all* those present will be participants in the suspected criminal activity") (emphasis added); *United States v. Shields,* No. 98–3059, 1999 WL 76890, at *3, 1999 U.S.App. LEXIS 2496, at *6–*9 (10th Cir. Feb.18, 1999) (relevant inquiry is whether supporting affidavit provides "probable cause to believe *all* those present possessed evidence of criminal activity") (emphasis added), *cert. denied,* 528 U.S. 839, 120 S.Ct. 104, 145 L.Ed.2d 88 (1999); *United States v. Graham,* 563 F.Supp. 149, 151 (W.D.N.Y.1983) (evidence seized pursuant to "all persons" warrant admitted because supporting affidavit established probable cause to search all persons found in the named duplex).

**6.** *Baker v. Monroe Township,* 50 F.3d 1186, 1188–89 n. 1, 1198 (3d Cir.1995) (2–1) (majority decision found *De Simone* inapplicable because warrant did not specifically state "all persons"; dissent inferred that warrant was for all persons and applied *De Simone* ).

**7.** *Brooks v. State,* 593 So.2d 97, 98 (Ala.Crim. App.1991); *Betts v. State,* 920 P.2d 763, 764 (Alaska Ct.App.1996); *People v. Johnson,* 805 P.2d 1156, 1160 (Colo.Ct.App.1990); *United States v. Graves,* 315 A.2d 559, 561 (D.C. 1974); *Bergeron v. State,* 583 So.2d 790, 791 (Fla.Dist.Ct.App.1991); *People v. Reed,* 202 Ill. App.3d 760, 147 Ill.Dec. 829, 559 N.E.2d 1169, 1171–72 (1990); *State v. Prior,* 617 N.W.2d 260, 264–65 (Iowa 2000); *State v. Thomas,* 540 N.W.2d 658, 665–66 (Iowa 1995); *State v. Vandiver,* 257 Kan. 53, 891 P.2d 350, 357 (1995) ("the affidavit must contain facts sufficient for the issuing magistrate to believe that the premises are confined to ongoing illegal activity and that *every person* within the orbit of the search possesses the items sought by the warrant") (emphasis added); *Sutton v. State,* 128 Md.App. 308, 738 A.2d 286, 293 (1999); *Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101, 105 (1976) (upholding "all persons" warrant because supporting affidavit made it "probable that *any person* in the apartment was a participant in the trafficking in heroin there") (emphasis added); *State v. Allard,* 674 A.2d 921, 923 (Me.1996); *State v. Hinkel,* 365 N.W.2d 774, 776 (Minn.1985); *State v. Pecha,* 225 Neb. 673, 407 N.W.2d 760, 765 (1987); *State v. Sims,* 75 N.J. 337, 382 A.2d 638, 646 (1978) (affidavit must provide "probable cause to believe that *all persons* who might be found on the premises of the service station were

#### c. Issue Unresolved

Two jurisdictions have held that "all persons" warrants must be based upon probable cause, but without specifying probable cause as to what.[9] Three other jurisdictions, including two federal courts of appeals, have noted the issue but have not resolved it.[10]

#### d. *Hayes:* Requiring Probable Cause Only That Some Person Likely to Be Present Is Involved in Criminal Activity

The law in Wisconsin follows a position which the Pennsylvania Superior Court held for several years but abandoned two years before Wisconsin adopted it. In *Commonwealth v. Heidelberg,* 369 Pa.Super. 398, 535 A.2d 611 (1987), *aff'd by an equally divided court,* 522 Pa. 138, 560 A.2d 140 (1989) (per curiam), that court applied *De Simone* and held that an "all persons" warrant was justified because

"probable cause existed to believe that anyone at the residence on the night in question would be involved in illegal drug-related activities." *Id.,* 535 A.2d at 615. Two years later, the court took umbrage at drug dealers' allegedly hiding behind the Constitution and announced a new rule:

> [N]o rule of constitutional construction requires that we ignore the realities of modern drug distribution systems in determining the reasonableness of the warrant issued in this case. Though it is certainly possible, *even probable,* that innocent third parties who happen to be at the wrong place at the wrong time may be subjected to searches under such warrants, the nexus between the person to be searched and the nature and seriousness of the criminal conduct suspected on probable cause, nonetheless, renders the probability of their culpable participation in the crime suspected sufficient to warrant a search of their person to prevent the destruction or

engaged in illegal gambling activities") (emphasis added); *Nieves,* 369 N.Y.S.2d 50, 330 N.E.2d at 34 (affidavit "must establish probable cause to believe that the premises are confined to ongoing illegal activity and that *every person* within the orbit of the search possesses the articles sought") (emphasis added); *State v. Kinney,* 83 Ohio St.3d 85, 698 N.E.2d 49, 54 (1998), *cert. denied,* 526 U.S. 1007, 119 S.Ct. 1148, 143 L.Ed.2d 214 (1999); *State v. Reid,* 319 Or. 65, 872 P.2d 416, 419 (1994); *Commonwealth v. Wilson,* 429 Pa.Super. 197, 631 A.2d 1356, 1358 (1993); *State v. Jackson,* 616 N.W.2d 412, 418 (S.D.2000); *State v. Covington,* 904 P.2d 209, 210–11 (Utah Ct.App.1995); *Morton v. Commonwealth,* 16 Va.App. 946, 434 S.E.2d 890, 893 (1993) ("the affidavit supported a finding of probable cause that those persons present in the private residence would be engaged in criminal activity"); *State v. Ballou,* 148 Vt. 427, 535 A.2d 1280, 1286 (1987) (evidence seized pursuant to "all employees" warrant admissible because affidavit supplied probable cause that all employees played role in criminal enterprise); *State v. Carter,* 79 Wash. App. 154, 901 P.2d 335, 338 (1995).

8. New Mexico and Texas have both held that evidence seized pursuant to an "all persons" warrant was inadmissible because the supporting affidavit did not supply probable

cause to search the particular defendant, but have not stated a general test governing when an "all persons" warrant is constitutional. *State v. Ortega,* 114 N.M. 193, 836 P.2d 639, 643 (1992); *Lippert v. State,* 664 S.W.2d 712, 716 (Tex.Crim.App.1984). For New Mexico, see also *State v. Valdez,* 91 N.M. 567, 577 P.2d 465, 466 (1978) (observing that no party contended that "all persons" warrant was legal).

Tennessee has applied the rationale of *De Simone* and its progeny in assessing other warrants. *State v. Heard,* No. M1999–00246–CCA–R3–CD, 2000 WL 262932, at *4 & n. 4, 2000 Tenn.Crim.App. LEXIS 211, at *11 & n. 4 (Tenn.Crim.App. Mar. 9, 2000) (applying *De Simone* in assessing whether there was probable cause for warrant authorizing search of "an unknown female black possibly Samantha Heard.").

9. *People v. Chargualaf,* Nos.Crim. 78–00066A, Crim. 79–00015A, 1979 WL 15100, at *3 (D. Guam A.D. Sept. 20, 1979) (per curiam); *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475, 480 (1976).

10. *Burns v. Loranger,* 907 F.2d 233, 234 n. 2 (1st Cir.1990); *Guzman v. Estelle,* 493 F.2d 532, 534 n. 7 (5th Cir.1974); *Wright v. State,* 164 Ind.App. 266, 328 N.E.2d 253, 254 & n. 2 (1975).

concealment of evidence of the crime suspected.

*Commonwealth v. Graciani*, 381 Pa.Super. 626, 554 A.2d 560, 562–63 (1989) (emphasis added). By allowing "all persons" search warrants even when it was *probable* that they would authorize searches of "innocent third parties," *Graciani* clearly abandoned the *De Simone* standard, which requires probable cause as to every person likely to be present. But four years later, in 1993, the Pennsylvania Superior court again reversed its course and explicitly returned to *De Simone*, holding that "all persons" warrants "are only permissible when the affidavit of probable cause contains sufficient facts to justify a search of *everyone* found on the premises." *Wilson*, 429 Pa.Super. 197, 631 A.2d 1356, 1358 (emphasis added).

The Wisconsin Supreme Court has not addressed "all persons" warrants, but in 1995 the Wisconsin Court of Appeals did, in *State v. Hayes*, 196 Wis.2d 753, 763, 540 N.W.2d 1 (Ct.App.1995). The supporting affidavit in *Hayes* stated that based upon the affiant's experience, it was common to find persons on the premises in drug searches who are also involved in drug activity, and that it was common to find contraband on such persons. *Id.* at 759–60, 540 N.W.2d 1.[11] The court held that these statements established probable cause "that persons on the premises would likely have controlled substances or drug-related paraphernalia on their persons." *Id.* at 762, 540 N.W.2d 1. Relying upon *Graciani*—but without observing that two years before, in *Wilson*, the Pennsylvania Superior Court had returned to the *De Simone* standard—*Hayes* held that "[t]he test is not whether innocent persons might be present on the premises, but rather whether the presence of likely guilty persons is demonstrated to a reasonable probability." *Id.* at 763. *Hayes* thus ef-

fectively holds that every search warrant for drugs may, as a matter of routine, authorize searching every person on the premises, so long as police supply readily-available boilerplate affidavit language asserting that drug-related contraband is often found on persons on premises that are suspected of having drugs.[12]

### 2. Constitutional Analysis of "All Persons" Warrants

#### a. What Standard to Apply

I now assess the constitutionality of the "all persons" clause of the warrant in this case. I first determine what standard to apply.

 The Constitution requires individualized reasonable suspicion of wrongdoing even for stop and frisk and other limited law enforcement searches. *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Chandler v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997); *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 454, 148 L.Ed.2d 333 (2000) (requiring individualized suspicion for narcotics-detection traffic roadblocks). Even a limited search of the person is a substantial invasion of privacy. *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985); *Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (quoting *Terry*, 392 U.S. at 24–25, 88 S.Ct. 1868); *id.* at 308, 119 S.Ct. 1297 (Breyer, J., concurring) (observing that the law provides significantly heightened protection to a search of a person, even a limited search of the outer clothing). Moreover, the Fourth Amendment protects persons, not just places; wherever a person may be, he is entitled to know that he will remain free from unreasonable

---

**11.** Other than minor grammatical changes, Detective Negron's supporting affidavit in this case makes the same assertions verbatim.

**12.** Indeed, as discussed *supra*, note 1, *Hayes* has been used to justify "all persons" search warrants for weapons and ammunition, on

the ground that weapons and weapon-related contraband may easily be secreted on one's person—even without any assertion that it is common for such contraband to be found on persons inside residences suspected of having weapons.

searches and seizures. *Katz v. United States,* 389 U.S. 347, 351, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The Supreme Court holds that an individual's mere propinquity to others whom there is probable cause to search does not supply probable cause to search the individual's person. Thus, a search warrant for a residence does not authorize police to search its occupants. *United States v. Di Re,* 332 U.S. 581, 586–87, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (dicta). Likewise, a suspect's talking to known narcotics addicts, even over a period of hours, does not establish probable cause to search him for contraband. *Sibron v. New York,* 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *see also Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ("The fact that appellant was in a neighborhood [indeed, in an alley] frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.").

In *Ybarra v. Illinois,* 444 U.S. 85, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Court considered facts somewhat similar to those here; police obtained a search warrant to search a tavern, based on probable cause that the bartender was selling heroin. *Ybarra,* 444 U.S. at 87–88, 100 S.Ct. 338. While executing the warrant, police officers patted down all patrons in a "cursory search for weapons," and found drugs inside Ybarra's pockets. *Id.* at 88–89, 100 S.Ct. 338. The Court observed that officers' only reason for patting down Ybarra was that he was present in a public tavern whose bartender, police had reason to believe, would have heroin for sale, *id.* at 89, 100 S.Ct. 338, and went on to hold that an individual's merely being on premises that are to be searched pursuant to a search warrant for contraband in no way establishes probable cause to search that individual's person.

It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

*Id.* at 91, 100 S.Ct. 338 (footnote and citations omitted).

Although *Ybarra* did not address "all persons" search warrants, *id.* at 92 n. 4, 100 S.Ct. 338, it discussed for more than two pages whether police could search an individual's person for drug-related contraband based upon anything less than probable cause, due to the seriousness of the drug problem and the ease of moving such contraband from one person to another. *Id.* at 94–96, 100 S.Ct. 338. The Court's emphatic conclusion was that the Constitution's long-prevailing standard of probable cause was "the best compromise that has been found for accommodating the often opposing interests in safeguarding citizens from rash and unreasonable interferences with privacy and in seeking to give fair leeway for enforcing the law in the community's protection." *Id.* at 95–96, 100 S.Ct. 338 (internal quotation marks and brackets omitted) (quoting *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

As discussed in the next section, the warrant here cannot withstand scrutiny under *De Simone*'s standard. I therefore need not assess whether "all persons" warrants are facially unconstitutional general warrants. The only question is thus whether to accept the analysis of *Graciani* and *Hayes.*

■ I find *Hayes* unpersuasive and indeed, deeply flawed.[13] *Hayes* allows warrants to search individuals' persons without even reasonable suspicion as to each person to be searched, much less probable cause as to each person. The decision appears driven by the nature and seriousness of suspected drug activity, *Hayes,* 196 Wis.2d at 763–64, 540 N.W.2d 1 (quoting *Graciani,* 554 A.2d at 562–63), but as the Seventh Circuit has observed, "[t]he war against drugs cannot be fought with unconstitutional procedures." *United States v. Novak,* 870 F.2d 1345, 1353 (7th Cir. 1989). *Ybarra* makes clear that the seriousness of criminal drug dealing, and the ease of transferring evidence from one person to another and concealing such evidence on individuals' persons, do not justify relaxing the constitutional requirement of probable cause to allow greater leeway for law enforcement at the expense of interferences with citizens' privacy. *Ybarra,* 444 U.S. at 94–96, 100 S.Ct. 338. Only four years ago, in overturning a Wisconsin Supreme Court standard, a unanimous United States Supreme Court held that generalized assertions about "the special circumstances of today's drug culture" are not a permissible substitute for individualized, case-by-case assessments of whether the Fourth Amendment's requirements are satisfied. *Richards v. Wisconsin,* 520 U.S. 385, 392, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). For these reasons, without addressing whether "all persons" warrants may be facially unconstitutional, I would adopt *De Simone* as between that standard and *Hayes,*

### b. Application of *De Simone* Standard

■ I now apply this standard. *De Simone* itself held that an "all persons" warrant for a department store or an industrial plant would "obviously" not be justified. *De Simone,* 288 A.2d at 850. The more public a place, the less likely a search of all persons will be sustained. *Prior,* 617 N.W.2d at 265 (quoting 1 William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 5.6(e), at 5–48 (2d ed.1999)).[14] Indeed, "all persons" warrants for public places are almost never sustainable under *De Simone,* because of the "substantial likelihood that a person with no connection to criminal wrongdoing might be subjected to search." *Kinney,* 698 N.E.2d at 54.

At least six published decisions address precisely the issue here, of "all persons" search warrants executed on public taverns; all six held that the warrants were unconstitutional.[15] In *State v. Robinson,*

13. *Hayes* did mention *Ybarra,* but quickly distinguished it on the grounds that it was not an "all persons" warrant case (and also that it addressed the search of a public place). It is therefore curious that *Graciani* is the only "all persons" warrant case cited in *Hayes; Hayes* did not distinguish, or even mention, *De Simone* or the twenty-nine other jurisdictions following it, much less the eight jurisdictions that have held or suggested that "all persons" warrants are facially unconstitutional.

14. It is worthy of note that *De Simone*'s standard does not automatically authorize "all persons" warrants for non-public places, especially private residences. Innocent persons are likely to be present in a residence, even if there is probable cause that the residence also contains evidence of illegal activity. *De Simone,* 288 A.2d at 854 ("In the case of a dwelling there is a great likelihood that an innocent person could happen to visit the occupant"); *Prior,* 617 N.W.2d at 266. The Ninth Circuit has held that "all persons" warrants are *never* constitutional for "a raid on any family home where innocent family members or friends might be residing or visiting." *Marks,* 102 F.3d at 1029. *See also State v. Wynne,* 552 N.W.2d 218, 221 (Minn.1996) (relatives, guests or hired workpeople); *State v. Anderson,* 415 N.W.2d 57, 61 (Minn.Ct.App. 1987) (salesmen, mailmen, repairmen, friends and family); *Reid,* 872 P.2d at 419 (persons reasonably expected to be approaching front door of private residence include uniformed mail carrier, package delivery person, volunteer soliciting donations for charitable purposes, or neighbor seeking to borrow sugar). Such concerns are particularly strong during daylight hours. *Kinney,* 698 N.E.2d at 56.

15. The Minnesota Supreme Court upheld an "all persons" warrant for an "after hours joint" in *Hinkel,* 365 N.W.2d 774, but this is not to the contrary; the search in *Hinkel* was

371 N.W.2d 624, 626 (Minn.Ct.App.1985), the Minnesota Court of Appeals held an "all persons" warrant for a bar invalid because "the police were dealing with the patrons of a licensed bar operating during normal business hours," and there was "little likelihood that everyone in the bar on a Friday night would be involved in criminal activity." *Id.* at 626. Similarly in *Thomas*, 540 N.W.2d at 665–66, the Iowa Supreme Court struck down an "all persons" search warrant executed on a bar during business hours:

> Completely innocent unsuspecting persons could easily enter to make a legitimate purchase of legal merchandise. Even if the reputation of The Bar is such that no local people would enter without the intention to purchase or sell controlled substances, it is still quite possible someone from out of town or new to the area could stop in to ask directions, use a pay phone, or make a legal purchase. Certainly there could be no probable cause to search such a person on the basis of their presence alone.

*Id.* See also *State v. Riggins*, 138 N.J.Super. 497, 351 A.2d 406, 407–08 (1976) ("Taverns have traditionally served the societal interest in and need for entertainment and community socializing. It is thus logical to assume that presence in a tavern would be for the legitimate purposes described. No rational conclusion leading to a probable cause belief that any person therein is involved in an illegitimate or criminal endeavor can be inferred from a patron's mere presence."); *Reed*, 147 Ill.Dec. 829, 559 N.E.2d at 1171–72 (similar

fact pattern and same result); *Wilson v. State*, 136 Ga.App. 70, 221 S.E.2d 62, 63 (1975) (same); *Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 35 (same).[16]

As noted above, even *Hayes* upheld its "all persons" warrant in part because the place to be searched was "a private residence and not a public place." *Hayes*, 196 Wis.2d at 766, 540 N.W.2d 1. Likewise, an earlier Wisconsin Court of Appeals decision distinguished *Ybarra* on the ground that "it is a relevant distinction that this was a home, a private residence versus a public tavern or some other area where individuals can come in and out without permission" and because "[t]he address searched was not a public place.... A reasonable inference is that it was a drug house." *State v. Jeter*, 160 Wis.2d 333, 339, 341, 466 N.W.2d 211 (Ct.App.1991) (citation omitted). Thus, even under the view of the Wisconsin Court of Appeals, an "all persons" warrant for a "public tavern" would be suspect.

I look to whether the facts before the magistrate (or here, court commissioner) were sufficient to allow her to draw the inferences and form the conclusions necessary to a determination of probable cause. *Giordenello v. United States*, 357 U.S. 480, 485–86, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Doubtful or marginal cases are resolved in favor of the magistrate's probable cause determination. *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). I thus assess the affidavit presented to the court commissioner. The affidavit supplied probable cause for a search as to five specific peo-

---

of a private residence after the legal closing hour for bars, and the court found that "[t]here was little likelihood that anyone would be in the house but to participate in the afterhours revelry." *Id.* at 776. The court in *City of Columbus v. Wright*, 48 Ohio App.3d 107, 548 N.E.2d 320, 323 (1988), stated in dicta that an "all persons" warrant for a bar was sufficiently specific, but did not address the probable cause issue.

16. The facts of the present case demonstrate why a magistrate must weigh the possibility that an "all persons" warrant will become a dragnet sweeping up and searching wholly

innocent people. *Nieves*, 369 N.Y.S.2d 50, 330 N.E.2d at 34. Two patrons at the Guadalajara Tavern the afternoon of the raid were Clint Grover and Hector Torres; both were there because their employer had closed for the day, due to a power outage, and both testified at the evidentiary hearing. (No information is in the record regarding the other four or five patrons.) Grover testified that while he was lying face-down on the floor with his hands cuffed behind him, he lifted his head to see where Torres was, and an officer stepped on his head and said, "I told you to keep your F-ing head down." (Tr. at 87.)

ple: the bartender; Jaime Molina–Carrillo; someone whom Detective Negron later identified as Garcia; and two others not identified in the record before me.[17] But it did not say how many patrons were in the tavern during the controlled buys, or could be expected to be present when police executed the requested warrant. It provided no other information to dispel the possibility that—even if the Guadalajara Tavern had a bad reputation in the neighborhood, as asserted in the last paragraph of the supporting affidavit—its patrons could, as *Thomas* warned, include people from out of town or new to the area stopping in to ask directions, use a pay phone, or make a legal purchase. Without such information, there was no basis to find probable cause that all persons on the premises would have contraband on their persons. *Riggins*, 351 A.2d at 408. On that basis, and even assuming that "all persons" search warrants are not facially unconstitutional, I find that the "all persons" clause in this case was unconstitutional.

## B. *Leon* Good–Faith Exception

The government's second theory is that even if the search warrant was unconstitutional, the cocaine and the incriminating key seized from Guadarrama should nonetheless be admitted under the good-faith exception enunciated in *Leon*, 468 U.S. 897, 104 S.Ct. 3405. The Supreme Court there held that the exclusionary rule does not bar the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900, 104 S.Ct. 3405.

Judge Goodstein recommended that I deny the motion to suppress based (in the alternative) upon *Leon*. Judge Goodstein noted that in the supporting affidavit, Detective Negron provided reasons for and specifically requested an "all persons" warrant, and that he was therefore entitled to rely upon it once issued.

Guadarrama's first objection is that Detective Unger testified that officers seized him based upon their "basic search warrant protocol," which included handcuffing and patting down all persons present for weapons. (Tr. at 56.)[18] On that basis, Guadarrama contends, officers did not rely upon the warrant at all, and thus *Leon* is inapplicable. However, Detective Unger also testified that, "The search warrant allowed for the search of every person in the tavern. So ... we would basically take custody of them on a temporary basis." (*Id.* at 72.) I find no basis to find that officers did not act in reliance on the warrant.

Guadarrama's second objection is that the Wisconsin courts have not adopted *Leon*'s good faith exception, *State v. Ward*, 2000 WI 3, ¶ 81, 231 Wis.2d 723, 760, 604 N.W.2d 517 (2000) (Abrahamson, C.J., dissenting), and that under the Ninth Amendment, evidence that would not be admissible in state court should not be allowed in federal court. There are two problems with this argument. The first is that, with or without *Leon*, the evidence likely would be admissible in state court under *Hayes*. The second problem is that,

---

17. The affidavit also asserted that persons arrested the previous month, when a drug search warrant was executed a block away from the Tavern, were "known to be affiliated with the Guadalajara tavern," (Aff. at 2), and further asserted that the Tavern was "known throughout the Hispanic community as a place where drugs can easily be acquired from the many different people who frequent this bar," (*id.* at 4). But the affidavit stated no basis of knowledge for these assertions, and so they could not properly be considered.

*Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

18. A uniform policy, by definition, is not based upon any assessment of the individual facts of each situation. For this reason, at least one federal court has held that such a per se policy could expose a municipality to damages under 42 U.S.C. § 1983. *Renalde v. City and County of Denver, Colo.*, 807 F.Supp. 668, 671–72 (D.Colo.1992).

as mentioned above, federal standards govern the admissibility of evidence in federal prosecutions. *Elkins,* 364 U.S. at 223–24, 80 S.Ct. 1437. Wisconsin may provide its citizens with greater protections in its state courts than guaranteed by the federal constitution, *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), but the U.S. Constitution remains the supreme law of the land, U.S. Const. art. VI, ¶ 2; the Ninth Amendment does not empower a state to limit the evidence that federal prosecutors may use to prosecute federal crimes in federal court.

### C. Legality of Guadarrama's Detention Under the Tavern Warrant

When police executed the search warrants for the Tavern and the upstairs residence, they detained the Tavern's patrons for at least fifteen minutes. During this detention, officers searching the upstairs residence found cocaine and other contraband. It was only after the discovery of this evidence that Guadarrama was formally arrested; and the cocaine in his pocket was found (and the key that opened the door to the upstairs residence was seized) only in a search pursuant to that formal arrest.

As a general rule, evidence is admissible if seized during a search incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, unless there are intervening circumstances, evidence seized in a search incident to an illegal arrest must be suppressed. *United States v. Xiong,* 60 F.Supp.2d 903, 910 (E.D.Wis.1999). Thus, if the detention that made a formal arrest possible was illegal, then—unless the taint of the illegal detention was dissipated before the formal arrest—any evidence found in a search pursuant to the formal arrest must be suppressed. *United States v. Green,* 111 F.3d 515, 520–21 (7th Cir.1997).

The Seventh Circuit applied *Wong Sun* in *United States v. Ienco,* 182 F.3d 517 (7th Cir.1999), to suppress evidence discovered following an illegal thirty-minute de-

tention not based upon probable cause. The facts are somewhat similar to those here. Two suspects were seized and unjustifiably detained in a locked police car for half an hour before being formally arrested; their arrest was based upon information that police acquired only during their unlawful detention. *Ienco,* 182 F.3d at 521–22. The court held that incriminating evidence found in the police car four hours after the suspects' formal arrest was properly suppressed, because it was acquired by virtue of the unlawful thirty-minute detention. *Id.* at 528–29. Thus, relying upon *Ienco,* Guadarrama argues that the evidence found when police searched him pursuant to his formal arrest must be suppressed because police established probable cause to arrest him—by discovering cocaine in the upstairs residence—only while he was being unconstitutionally detained pursuant to the illegal "all persons" search warrant.

### 1. Application of *Leon*

The government here contends that officers acted in good faith reliance upon the search warrant, implicitly referring to *Leon.* To be sure, the search warrant purported to authorize searching all persons, and authorization even for a limited search automatically carries with it authorization to stop and detain a person. *Terry,* 392 U.S. at 32–33, 88 S.Ct. 1868 (Harlan, J., concurring). Nonetheless, the Seventh Circuit recently suggested that the *Leon* good faith exception should not be extended to situations where the challenge is to the manner of execution of a warrant. *United States v. Husband,* 226 F.3d 626, 636 n. 6 (7th Cir.2000) (dicta) (quoting 1 LaFave, *Searches and Seizures* § 1.3(f)). Moreover, officers continued to detain Tavern patrons after they finished searching them; the warrant's purporting to authorize a search of all persons present did not authorize keeping them detained after they were searched. Thus, *Leon* alone cannot justify the continued detention.

## 2. *Summers'* Application to Public Premises

The government argues that the detention was justified under *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), which authorizes detaining the occupants of a home during the execution of a search warrant for contraband. In *Summers*, Detroit police were about to execute a search warrant at a private residence when they encountered the owner coming down the front steps, and they detained him while they executed the search warrant. Police found narcotics in the basement; placed the owner under formal arrest; and found drugs when searching his person incident to arrest. The Supreme Court initially noted that *Dunaway*, 442 U.S. 200, 99 S.Ct. 2248, "reaffirmed the general rule that an official seizure of the person must be supported by probable cause, even if no formal arrest is made." *Summers*, 452 U.S. at 696, 101 S.Ct. 2587. *Dunaway*, however, "recognized that some seizures significantly less intrusive than an arrest have withstood scrutiny under the reasonableness standard embodied in the Fourth Amendment." *Summers*, 452 U.S. at 697, 101 S.Ct. 2587. Citing *Terry* and other cases, the Court observed that "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Summers*, 452 U.S. at 699, 101 S.Ct. 2587.

The *Summers* Court found that the detention before it was a comparatively limited intrusion. The Court identified three legitimate law enforcement interests served by the detention: (1) preventing flight in the event that officers found incriminating evidence; (2) minimizing the risk of harm to officers and occupants alike; and (3) gaining the assistance of the "occupants" to facilitate an orderly and quick search, for example, by opening locked doors or containers. *Id.* at 702–03, 101 S.Ct. 2587. The Court also found that the combination of a search warrant based on probable cause and the connection between an occupant and his home provides an articulable fact to support detaining the occupant. *Id.* at 703–04, 101 S.Ct. 2587. Balancing these factors, the Court found that officers may detain persons found on the premises while executing a search warrant. *Id.* at 705, 101 S.Ct. 2587.

Guadarrama argues that—despite its broad language in stating its holding at the end of its opinion—*Summers* justifies detentions only during searches of private premises. *Summers* considered the detention of the resident of a private home, and rested its conclusion in part on its finding that the detention of a person in his own home represents "only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Summers*, 452 U.S. at 703, 101 S.Ct. 2587. Thus, Guadarrama urges that *Summers* cannot justify a detention in a public place.

There is substantial authority for this position. *Summers* refers to the "resident" or "occupant" of a "house" or a "home"; and Guadarrama was neither a resident nor an occupant of the Tavern, and the Tavern is neither a house nor a home. Although the Seventh Circuit has found that *Summers* can authorize the detention of individuals who are neither occupants nor residents, *United States v. Pace*, 898 F.2d 1218, 1239 (7th Cir.1990), *Pace* involved the search of a private condominium, and the decision distinguished *Ybarra* in large measure because the officers observed large amounts of cocaine and money lying in the open. *Id.* at 1240; *United States v. Johnson*, 170 F.3d 708, 717 (7th Cir.1999).

Several circuits hold that *Summers* should be applied exclusively to detentions during searches of residences. *See, e.g., Baker*, 50 F.3d at 1192 (holding that *Summers* pertains only to the residents of the house under warrant, although police may

stop people coming to or going from the house to ascertain whether they live there); *Hazzard v. City of East Palo Alto*, No. 94–16230, 1996 WL 5829, at *1, 1996 U.S.App. LEXIS 640, at *4 (9th Cir. Jan.8, 1996) (*"Michigan v. Summers* applies only to situations in which an individual is asked to remain at his home while police officers conduct a search"). I am aware of no case in which a court has held that *Summers* justified detaining patrons or people simply passing through a public place.[19]

Both Professor LaFave and the Court of Appeals for the District of Columbia have considered whether *Summers* could justify detaining all patrons in a tavern pursuant to a search warrant for the tavern. Both conclude that the answer is no. Professor LaFave urges that *Summers'* language referring to occupants must be read literally; discussing the detention of a tavern's patrons, he concludes that, "the *Summers* rule, had it then existed, would not have justified the detention in *Ybarra v. Illinois* of a customer in a bar the police entered to search … the *Ybarra* facts present an easy case as to what kind of situation is *not* covered by *Summers*." 2 LaFave, *Search and Seizure* § 4.9(e) at 651. Similarly, the D.C. Court of Appeals observed that, "[c]ommon sense suggests that there is a much greater likelihood that a person found in a small private residence containing drugs will be involved in the drug activity occurring there than an individual who happens to be in a public tavern where the bartender is suspected of possessing drugs." *United States v. Reid*, 997 F.2d 1576, 1579 (D.C.Cir.1993). Likewise, the Second Circuit observed, where police patted down one bar patron after seeing a second patron toss a gun to a third patron, that "while it is obviously reasonable to believe that individuals in a private home or vehicle have some connection with one another, it is not reasonable to assume that all of the persons at a public bar have such a connection." *United States v. Jaramillo*, 25 F.3d 1146, 1152 (2d Cir.1994).

For these reasons, I conclude that *Summers* does not justify detaining persons in a public place while officers execute a search warrant for that place. Nonetheless, the unusual facts in this case are not the same as in *Ybarra*, where there was no reason to think that anyone present had any connection to dealing drugs other than the bartender. Here, the Tavern warrant was executed in coordination with the Residence warrant; a confidential informant had reported, and Detective Negron had observed, Tavern patrons leaving the Tavern's side door, going upstairs, and returning within minutes with cocaine. At least one Tavern patron who sold drugs during one of the controlled buys, Jaime Molina–Carrillo, lived in the upstairs residence. The police thus reasonably believed that patrons of the Tavern lived in the upstairs residence where they stored cocaine which they sold downstairs in the Tavern. The connection between the Tavern (and its patrons) and the upstairs residence was thus so tight that, in the unusual circumstances of this case, officers were justified in considering the two premises together and it is appropriate to apply *Summers'* analysis.

### 3. Show of Force and Intensity of Intrusion

*Summers* identified three law enforcement interests that justify detaining persons present on premises being searched. Two of those interests were

---

19. Indeed, I am aware of only one case, *United States v. Cooper*, 984 F.Supp. 225, 232–33 (S.D.N.Y.1997), in which *Summers* has been raised in connection with a search or a detention in a public place. The court there held that a search warrant to find guns in a grocery store did not provide law enforcement officers with justification to pat down and search a customer where there was neither probable cause nor reasonable articulable suspicion to support the search. "The presence—or potential presence—of guns always creates a certain degree of exigency. But that presence, without more, cannot automatically justify a patdown of any and all persons who happen to be present at the scene in a public place." *Id.*

present here. Officers legitimately wanted to detain Tavern patrons in the event that they discovered contraband in their search of the upstairs residence that would provide probable cause to arrest one or more Tavern patrons; and they needed to protect themselves and nearby persons from any risk of violence as they executed the simultaneous warrants.

Guadarrama challenges the officers' use of force in detaining the Tavern patrons. *Summers* acknowledged that detaining a person in his house was a comparatively limited intrusion, and Guadarrama urges that officers' show of force here—ordering patrons onto the floor at gunpoint, handcuffing them, and keeping them at gunpoint even after handcuffing them—is of a different magnitude altogether.

Under *United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), there is no per se rule about how long a suspect may be detained before the detention becomes a full-scale arrest. Guadarrama's detention before being formally arrested lasted about fifteen minutes; I agree with the Third Circuit that a fifteen-minute time for police to identify and release a fairly large group of people during a drug raid is not unreasonable. *Baker*, 50 F.3d at 1192. Several courts have upheld detentions based on facts similar to those here. *United States v. Fullwood*, 86 F.3d 27, 30 (2nd Cir.1996) (officers acted reasonably in handcuffing house's occupant for 15 to 20 minutes while executing search warrant for drugs; decision based in part on handcuffs being removed once residence was secured); *Torres v. United States*, 200 F.3d 179, 185–86 (3rd Cir.1999) (detention lawful where officers executing narcotics search warrant left handcuffed occupant on floor wearing only a towel for five minutes, then helped him to couch, where he remained in handcuffs for between one and a half and three hours; following initial moments, officers stopped pointing gun at him); *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir.1993) (detention reasonable where officers executing narcotics and firearms search warrant handcuffed house's occu-

pants and forced them to lie face-down while they conducted the search); *Turner v. Sheriff of Marion County*, 94 F.Supp.2d 966, 974 (S.D.Ind.2000) (detention reasonable where officers pointed guns at heads of home's residents, handcuffed them, and put them on floor face-down for 10 to 15 minutes); *Barron v. Sullivan*, No. 93–C–6644, 1997 WL 158321, 1997 U.S. Dist. LEXIS 4014 (N.D.Ill. Mar.31, 1997) (lawful detention where police with search warrant entered home with guns drawn and forced residents to kneel on ground with hands in the air for first 15 or 25 minutes, during which officers kept guns drawn; detention lasted three hours in total, and residents were confined to a single room).

The facts of this case are not as extreme as in other handcuffed detention cases that courts have found unreasonable. *Heitschmidt v. City of Houston*, 161 F.3d 834, 838 (5th Cir.1998) (unlawful detention where officers executing a search warrant to investigate a prostitution ring kept a home's resident in painfully tight handcuffs for four hours); *Franklin v. Foxworth*, 31 F.3d 873, 874–78 (9th Cir.1994) (detention unreasonable where officers executing drug search warrant handcuffed a disabled elderly man wearing only a T-shirt, carried him from his bed to a couch, and left him in handcuffs there for over two hours with his genitals exposed); *United States v. Rodriguez*, 68 F.Supp.2d 104, 109 (D.Puerto Rico 1999) (detention unreasonable where ATF agents kept resident of home in handcuffs for three hours while they executed narcotics search warrant); *Renalde*, 807 F.Supp. at 672 (detention "qualitatively different" than *Summers* where officers, executing search warrant on residence suspected of being used by prostitution ring, handcuffed occupants behind their backs and made them lie face-down on floor for "prolonged period"). To be sure, in *Sprosty v. Buchler*, 79 F.3d 635, 642–43 (7th Cir.1996), the Seventh Circuit held that a non-handcuffed detention of several hours under armed guard, while officers executed a search warrant, exceeded the scope of intrusion authorized by

*Summers.* However, the issue in *Sprosty* was whether the situation was sufficiently coercive as to constitute custody and trigger the right to *Miranda* warnings; whether an arrest has occurred for Fourth Amendment purposes is gauged by a different standard than whether an interrogation is custodial for Fifth Amendment purposes.

*Summers* noted that executing narcotics search warrants can be dangerous, and that the risk of harm to both police and any other persons present is minimized if the officers obtain and keep unquestioned command of the situation. *Summers,* 452 U.S. at 702–03, 101 S.Ct. 2587. I do not find that officers' show of force in this case made Guadarrama's detention illegal; rather, I believe that the detention here was authorized under *Summers'* balancing test. Because the detention was legal, there is no cause to suppress evidence found pursuant to arrest, following the detention, as fruit of the poisonous tree.

### D. Excessive Force

 Guadarrama argues that officers' alleged excessive force justifies suppressing the evidence found on his person pursuant to arrest.[20] The Fourth Amendment prohibits the use of excessive force during a search and seizure. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). I found above that due to the unusual circumstances of this case, officers were justified in detaining Guadarrama and the other Tavern patrons until they completed their search of the upstairs residence.

There are several problems with the argument here. First, there may be a distinction between an excessive *display* of force and an excessive *use* of force, *McNair v. Coffey,* 234 F.3d 352, 354 (7th Cir.2000), and Guadarrama does not allege that he was assaulted or roughed up. Second, although damages are available in a

civil § 1983 action if officers' conduct falls short of an "objectively reasonable" standard, *Graham,* 490 U.S. at 397, 109 S.Ct. 1865, evidence is suppressed from a criminal trial only if officers' conduct was so excessive that it "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). There is no indication here that this standard is satisfied. And third, as one commentator has noted, officers' discovery of evidence is rarely causally linked to the degree of force used, making suppression not well designed to control excessive force. William J. Stuntz, *Privacy's Problem and the Law of Criminal Procedure,* 93 Mich. L.Rev. 1016, 1072 (1995). Even assuming that the officers here used excessive force in detaining Guadarrama, there is no indication that the evidence discovered on his person in the search incident to his arrest was due to the degree of force that officers used while detaining him.

### E. Legality of the Upstairs Search

Guadarrama challenges the constitutionality of the search of the upstairs residence (and Garcia adopts this challenge), on the ground that it was in fact a multiunit dwelling; that the warrant did not authorize entry into the multiple units; and that probable cause is needed to search each unit in a multiple-occupancy structure. *United States v. Shamaeizadeh,* 80 F.3d 1131, 1137 (6th Cir.1996). Judge Goodstein's recommendation includes the proposed factual finding that the evidence does not indicate the existence of separate and multiple residences, and that in any event, the officers' search began in a common kitchen, where they found cocaine and cash. (R. 40 at 14.) Guadarrama's objection to this portion of the recommendation simply states that he relies upon the briefs that he earlier submitted to Judge Goodstein. Under Local Rule § 13.03(c) and

---

**20.** I am not confident that this issue was timely presented under Fed.R.Crim.P. 12(c), 12(f), but will consider it because the government has not challenged its timeliness. Guadarrama's counsel stated in the evidentiary

hearing before Judge Goodstein that he had pled the issue (Tr. at 65), but the first sign I see of its being briefed is in Guadarrama's Reply in Support of Objections (R. 50 at 3–5).

*Johnson v. Zema Systems,* 170 F.3d at 742, Guadarrama's failure to identify any reason for me not to accept the proposed findings or recommended conclusion requires me to review only for clear error. Having reviewed the record, I see no clear error.

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that defendant Rey Garcia's request to adopt defendant Guadarrama's motion to suppress and objections to the recommendation (R. 42) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Magistrate Judge's recommendation (R. 40) is **ADOPTED** and that defendant Guadarrama's motion to suppress (R. 28) is **DENIED.**